## Finlayson v. Cuyuga Coal & Coke Company, Incorporated.

(Decided February 9, 1917.)

### Appeal from Floyd Circuit Court.

1. **Deeds—Action to Cancel Deed—Evidence.**—In an action seeking the cancellation of a deed by a woman, who had conveyed her farm to a coal company, and who in said action, relied upon the grounds that the company's agents caused her to execute the deed by coercion, and that she did not have sufficient mental

capacity to transact her business and to know and appreciate the legal effect of such transfer; Held, that the evidence introduced was not sufficient to show mental incapacity of the plaintiff, or coercion on the part of the company.

2. Deeds—Ratification—Estoppel.—Where, after a sale and transfer was made, the grantor leased the property from the grantee for nearly three years, holding the property as the tenant of the grantee, and had not surrendered the possession at the time action was brought, the grantor by such action, ratified the deed, and is now estopped to say that she is not bound by the conveyance.

3. Deeds—Inadequacy of Price.—Mere inadequacy of consideration is insufficient to set aside a deed, where it is unaccompanied by fraud or duress.

MAY & MAY for appellant.

B. F. COMBS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted in the Floyd Circuit Court in 1914, by Mrs. Catherine Finlayson, seeking the cancellation of a deed made by her in 1911 to the Cuyuga Coal & Coke Company, for a tract of land containing about 100 acres lying on Big Sandy river, opposite the mouth of Beaver creek, in Floyd county.

The trial court denied the plaintiff the relief sought, dismissed her petition and she prosecutes this appeal.

Mrs. Finlayson owned the tract of land described in the petition for a good number of years before she entered into the contract and deed which is the basis of this action. The land is divided into bottom and hill side or mountain and contains by survey about 84 acres, about half being bottom land and half hill side or mountain land. The mountain land contains coal, but how much is uncertain.

In September, 1911, she entered into a written contract with the defendant company for the sale to it of the land for $5,000.00, giving thirty days in which to accept the proposition. In about nine days the agents returned and requested a deed, offering to pay the full purchase price. At first Mrs. Finlayson declined to make the deed, saying that she had changed her mind and did not desire to sell the property. The agents insisted and she protested and this question was argued pro and con; the agents leaving and coming back, finally consummating the deal, on that day, by the execution of a

deed by Mrs. Finlayson to the Cuyuga Coal & Coke Company for the tract of land in question. Shortly thereafter she indicated to one of the agents of the company that she was dissatisfied with the trade and asked him to pay her $1,000.00 more, which he declined to do; then she asked that he pay her $500.00 more and this he declined, but finally agreed that he would pay off for her a note for $250.00, which he did. This was in addition to the original price of $5,000.00 theretofore paid. The company shortly thereafter took possession of all of the farm, except the house and garden, and began to clear it of briers, bushes and other filth, and to rebuild the fencing and make other repairs. About the same time they leased the place for the year of 1912 to Mrs. Finlayson, in consideration that she would take care of it, but no rent was exacted of or paid by her. This lease was in writing and by its terms she was made the tenant of the company, and said lease is made a part of this record. Accordingly Mrs. Finlayson occupied the place, under the lease for the year of 1912. At the end of the term she asked to lease the place for the succeeding year, and another lease, in writing, was entered into for the year 1913. In the meantime Mrs. Finlayson asked the agents of the company to repair the house in which she lived, and in obedience to this request the company put a new roof on the house, rebuilt the porches, papered some of the rooms, repaired the foundation, chimneys, and other parts of the house at a cost of something more than $1,000.00. Mrs. Finlayson pointed out such repairs as she wanted made, and continued to live in the house during the year of 1913, and part of 1914. In April, 1914, the company having made other arrangements, and becoming somewhat annoyed at the demands of Mrs. Finlayson and her son, J. M. Finlayson, requested her to give possession of the premises, which she declined to do, and instituted this action for the cancellation of the deed and the restoration of the property, tendering back to the company the $5,000.00 purchase price, and offered to pay the cost of the improvements placed upon the farm.

To obtain this relief Mrs. Finlayson, in her petition, alleges that she was mentally incapacitated, at the time of making the contract and signing the papers, and did not possess the mental capacity to understand the effect or legal import thereof, and that afterwards she was by threats and intimidations, on the part of the agents of

the company, frightened into executing the deed to the defendant company for the land, at a time when she did not possess the mental capacity to enter into a contract or deed, and when she was in a feeble state of health, both in mind and body, brought on, as she charges, in part by grief because of the death of her late husband, and also the death of her father, for both of whom she mourned, and partly by ill health superinduced by what is commonly called "change of life."

She chiefly relies, for the cancellation of the deed upon four grounds, as set out in her brief:

First. Mental incapacity to make a contract or deed at the time she attempted so to do.

Second. Undue influence by coercion, fraud and intimidation resorted to by the agents of the company in procuring the contract and deed.

Third. Such gross inadequacy of consideration as to raise a presumption of fraud in procuring the execution of the deed, and to authorize the chancellor to cancel the deed.

Fourth. Appellee pleads an estoppel against the appellant based upon certain written leases for the property conveyed.

The company denies the allegations of the plaintiff's petition and asserts:

First. Appellant (Mrs. Finlayson) was neither mentally incapable or coerced when the contract and deed were made.

Second. She is estopped to ask that her deed be cancelled by requesting and enjoying the expensive improvement placed upon the premises by appellee after the sale thereof.

Third. Appellant ratified the sale to appellee, had there been fraud, by entering into the several contracts to lease the property; by asking for and receiving more money, and requesting the improvements; and,

Fourth. Appellant while a tenant of appellee could not question its title to the property, nor maintain this action.

This record consists of more than twelve hundred typewritten pages, mostly depositions upon the question of the mental capacity of Mrs. Finlayson at the time and immediately before and immediately after she executed the deed and contract which is the subject of this controversy. But a considerable part of the evidence is directed to the question of adequacy of consideration

paid by the company for the land. A number of witnesses introduced by the plaintiff testify with reference to her mental condition. Her brother, Dr. May and members of her household and close neighbors describe her acts and conduct upon different occasions. They also detail her conversations. It is shown by the evidence that Mrs. Finlayson was near fifty years of age at the time of the making of the contract and deed, and had some time before that fell into ill health and was experiencing a "change of life," common to women of that age. She was nervous, and irritable. Many times she would cry without any apparent reason. On several occasions she left her home without the knowledge of the family, and hid herself. Sometimes she was found at the grave of her departed husband, weeping. This, according to plaintiff's evidence, continued for several months before the execution of the writings complained of, and one witness, a neighbor woman, testified that Mrs. Finlayson was found at her gate a day or so after the execution of the deed, lying on the ground, crying and expostulating against the acts of the company's agents in taking her land.

On the other side, the company introduces a number of witnesses, whose evidence tends to prove that Mrs. Finlayson was, during all of this time, of such mental capacity, will power and understanding, as enabled her to make and understand contracts, and to carry on business generally. It introduced several neighbors who saw and talked with her frequently at church, stores and other places. Others observed her and heard her talk frequently. It also introduced the banker, and an attorney or two at the county seat, all testifying that Mrs. Finlayson displayed no sign of insanity or mental unsoundness, but was a woman above the average in intelligence, and was, so far as they could see or observe, fully capable of guarding and protecting her own interest. It also introduced a number of letters purporting to have been written by Mrs. Finlayson to Mr. Hite, the agent of the company, with reference to leasing the property and other matters, and each of these letters— part of the record—is sound and sensible. The testimony for the company also shows that shortly after the execution of the deed, when Mrs. Finlayson was informed that some member of her family had criticised her action in selling the property, stated in a resentful manner, that she had no use for the farm; that her boys

were wayward and idle and would not cultivate it, and she could not make a living on it, and she sold it because she wanted to, and that she knew her own business. It is also shown that the defendant company's agents approached her to buy the land some two or three years before the deal was finally consummated and offered her $6,000.00 for the property, but she declined this offer. Afterwards her son John wrote several letters to the company asking them to take up the matter of purchasing the property again. These letters are introduced in evidence and made a part of the record and are very insistent, and say in substance that his mother is very anxious to make the deal. The company declined to prosecute negotiations for some two or three years, saying that it did not desire to purchase property on that side of the river, but finally, in response to a letter written by her son, the agents of the company visited Mrs. Finlayson, and entered into the contract of which she complains. The deal had been under consideration for as much as three years before the contract was made.

The chancellor who tried the case in the circuit court, no doubt, had the benefit of a personal acquaintance with many of the witnesses who testified, and this, all must admit, is of incalculable value in the determination of questions such as are involved in this case. There is a sharp conflict in the evidence on two points:

First.  Mental capacity; and

Second.  Inadequacy of consideration.

The deed of a person of unsound mind is not void, but only voidable.  Wathan v. Skagg, 161 Ky. 600; Breckinridge v. Ormsby, 11 J. J. Marshall 236; Rusk v. Penton, 14 Bush 490; Arnett's Committee v. Owens (not officially reported), 65 S. W. 151; Johnson's Committee v. Mitchell, 146 Ky. 382; McDowell v. McDowell, 137 Ky. 165.

If it be true that Mrs. Finlayson's mind was impaired at the time of the making of the contract and deed, or either, yet the writing was not void, but only voidable, and being voidable only, was subject to ratification by the acts and conduct of the grantor.

She ratified her deed when she procured a lease of the premises from her grantee, and again when she requested, stood by, and allowed her grantee to make improvements upon the house and premises which she had conveyed it, and which she then occupied as the tenant of her grantee.  She is now estopped to say she is not

bound by her conveyance. In the case of Alexander v. Woodford Spring Lake Fishing Company, 90 Ky. 215; it is said:

"If one stands by and sees another build a house on his land, the latter acting in good faith, and believing that it belongs to him, will the real owner be permitted to stand by and see the house erected and then assert his title for the first time? Equity will prevent him from speaking when, as a conscientious man, he should remain silent. . . . . When a man with full knowledge, or at least with sufficient notice or meaning or means of knowledge of his rights, and of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of a transaction, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly and deliberately permits another to deal with property or incur expense under the belief that the transaction has been recognized, the transaction, although originally impeachable, becomes unimpeachable in equity."

To the same effect are the following cases: Stith v. Carter, 60 S. W. 725 (not officially reported); Phillips v. Clark, 4 Met. 348; Foster v. Shreve, 6 Bush 519.

Some of the evidence for the plaintiff is rather strong to the effect that the consideration was altogether inadequate. Some of the witnesses fix the value at $20,000.00, others as much as $25,000.00 for the farm, but upon cross-examination these witnesses were not able to point out any farm or land of like character, or indeed any farm or land at all, in that vicinity, at that time which sold for a greater price, the acreage considered, than this Finlayson farm.

At the time of the sale, the C. & O. railroad had a station at the mouth of Beaver creek, just opposite the farm, but since that time a junction has been made at this depot for a line of road up main Beaver creek, and also up a tributary of Beaver, and at the time of the preparation of this case, the coal, both in Beaver creek and in property surrounding this in question, was being developed, and a line of railroad had been surveyed and was in course of construction over and across this particular tract of land, which, of course, excited interest in the property, and enhanced its salable value.

But most of this enhancement has come about since the execution of the contract and deed, so that these matters could not affect the question of adequacy of con-

sideration in this case because that must depend upon the conditions and circumstances which exist at the time of the execution of the writing, and not that which may prevail at a subsequent date, when the projection of railroads and the development of coal property have changed the situation. It seems to us, from the evidence, that $5,000.00, the sum received by Mrs. Finlayson for this 84 acres of land, transferred to the defendant company, was reasonably adequate and fully as large a sum as was received by any of her neighbors at that time, in that vicinity for lands of like nature and character. The price therefore cannot be said to be inadequate. If she had held the lands for a few years, no doubt she could have realized a greater sum, but this is equally true of almost all coal bearing lands in this mining section of eastern Kentucky. All lands in this part of the state are advancing in price, because of the great coal deposits and consequent development.

The plaintiff, Mrs. Finlayson, was not misled or prejudiced by the conduct of the defendant's agents. She had several years in which to consider the trade and in which to sell to others for a higher price, but she could not sell the lands for more after three years' effort. At the time of the purchase and making of the deed, the price, $5,000.00, from the evidence appears all sufficient. But the property has since enhanced in value by reason of the improved industrial conditions in that vicinity. In making the purchase the company took the chance. Suppose the coal deposits had not proven workable, or for some reason had been of no value, could the company have procured relief from the bargain?

Then, too, the plaintiff has been guilty of laches, in bringing her action? If she was overreached, or coerced in making the deed, it was her duty to seek relief, without unnecessary delay. She should not have waited three years. Her children are of mature age, and strong both in mind and body. Her brothers are and were experienced business men, and were closely associated with the plaintiff. In fact, members of her family during all of the time which she now claims she was unbalanced, dealt with her as though she was in full possession of all of her faculties; traded with her, bought part of this tract of land, and took title bond or other contract. The contemporaneous acts and conduct of her family, indicate

that they regarded her as mentally capable of protecting her own interests, and that her mind was not unbalanced.

We find no case where it has been held that mere inadequacy of consideration, unaccompanied by other influencing circumstances, was sufficient to avoid a deed, but it is a well established rule everywhere that adequacy of consideration is wholly unimportant, where no fraud or oppression is charged or shown.

This record discloses no fraud on the part of the defendant company or its agents—no oppression or coercion—and we know of no rule whereby the deed can be set aside or cancelled upon the ground of inadequacy of consideration alone, even though the consideration was not altogether commensurate.

The plaintiff, Mrs. Finlayson, at the time of the filing of this action, was leasing from the defendant company residing upon this particular property as the tenant of the company. This action is an attempt on her part, to assail the title of her landlord, without first having surrendered the possession of the premises. This she cannot do, under the authority of the cases of Saunders v. Moore, 14th Bush 97, and McConnell v. Bowdry, 4th T. B. Monroe 400.

The chancellor having arrived at the conclusion that plaintiff was not incapacitated, and that no fraud was practiced upon her, in the procurement of the contract and deed by the defendant company or its agents, this court feels constrained to concur in the decree, and affirm the case.