### Burns et al. v. Dillon et al.

(Decided October 30, 1928.)

Appeal from Rowan Circuit Court.

1. Deeds.—Deed of land, described as that conveyed to grantor by named person and bounded as in plats of division of estate of latter's father, held to embrace only lots received in such division, lived on, and claimed by, person named, not lots set apart to other children, known by name of sister's husband, who had lived thereon ever since division, and mortgaged to grantor after execution of deed.

2. Evidence.—Patentee's deed of land, held by grantee and others claiming under him for over 100 years after its execution, held properly admitted in evidence, in action to quiet title, under the ancient document rule, as against contention that no power of attorney in agent signing and acknowledging it was shown.

3. Partition.—Court's error in not ordering deeds made pursuant to division of decedent's estate, report of which was ordered to be recorded, held not to affect substantial rights of parties to suit, brought 75 years later, to quiet title, in view of long possession of land under division proceedings.

4. Evidence.—Unimpeached certificates of county court clerks that deeds were acknowledged before them and duly recorded on certain dates, and of later county clerk that foregoing "substituted deeds" were lodged for record with him on certain date, held to show that deeds were original papers, not substitutes.

5. Deeds.—The legal effect of a deed depends on its terms, not on the order in which the grantors' names are written.

6. Estoppel.—A general warranty deed does not pass grantor's subsequently acquired title to land not conveyed thereby; warranty being only of title to property conveyed.

7. Vendor and Purchaser.—That deed to plaintiffs' predecessor in title was a record when defendants' predecessor purchased land

from grantors was immaterial, in action to quiet title to land claimed by plaintiffs under prior deed not including that purchased.

8. Adverse Possession.—Where plaintiffs' and defendants' predecessors in title and their families lived together on land, to which plaintiff sought to quiet title, for more than 15 years, plaintiffs' predecessor had no adverse possession thereof as between him and defendants' predecessor.

9. Estoppel.—That father's deed to daughter and her children in consideration of love and affection was in handwriting of daughter's husband did not estop corporation, purchasing land from daughter and her husband without knowledge of such fact, and its successors in title, from asserting title thereto; deed being only one of gift without consideration paid.

10. Equity.—Relief will be denied in equity, where the plaintiffs have slept on their rights.

11. Adverse Possession.—While limitation does not run against remainderman during life tenant's life, a person holding under life tenant may not commit waste, and, if he does, action may be brought against him by remainderman.

12. Quieting Title.—Where children knew that their deceased parents had sold land, and had reason to know that purchaser was holding it as his own, not as life tenant, more than 30 years before bringing action to quiet title, purchaser's successors having record title cannot be disturbed in equity.

ALLIE W. YOUNG, CLAY & HOGGE and E. C. O'REAR for appellants.

D. B. CAUDILL and W. E. WHITE for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

This is an action in equity instituted by appellants to quiet their title to 200 acres of land in Rowan county. The defendants denied the plaintiff's title and set up title in them. Proof was taken, and on final hearing the circuit court dismissed the petition. The plaintiffs appeal.

George Johnson, on April 14, 1797, obtained a patent from the commonwealth for 3,000 acres of land. On February 8, 1810, he conveyed 300 acres of this land to Robert Nickel. Nickel took possession and lived on the land until he died. After he died, on March 10, 1852, the land was divided into ten lots, one of which was set apart to each child. The land in controversy embraces lots 1, 2, 5. 6, 7 and 8. Lots 1 and 2 in that division were assigned to William Nickel, who had bought the interest

of his brother James Nickel. Lot 6 was set apart to the daughter, Malvina Hawkins. Lots 5, 7, and 8, which adjoined lot 6, were set apart to three other children, who sold them to Moses Hawkins, the husband of Malvina. Hawkins and his wife settled upon the property and lived there until October 20, 1863, when they conveyed the property to H. G. Burns. William Nickel settled on lots 1 and 2 and lived there until about the time of the Civil War. On August 1, 1861, he conveyed these lots to H. G. Burns.

H. G. Burns married the daughter of Elkana Johnson, and before the Civil War Elkana Johnson and wife and Burns and wife moved into the William Nickel house and were living there when the war came on. Burns joined the Southern Army. His wife and children remained there with her father and mother. After the war, H. G. Burns and his family lived for some years in Virginia, but about 1868 they returned to the old home in Rowan county and lived there with her father and mother until about 1885, when both families moved to Virginia. While they were so living on the land, on March 1, 1872, Elkana Johnson executed a deed to Mrs. Burns and her children. The material part of this deed is in these words:

"In consideration of the love and affection that I have for the party of the second part and for the love of her children I have this day given, granted, aliened and conveyed unto her for and during her life and after her death in fee simple title unto her children above named, all the right, title, interest and possession in and to the land where I now live, lying on the east fork of Triplett Creek and Christy Fork of Triplett Creek, the same land conveyed to me by Wm. Nickell and bounded by a deed now of record in the Rowan County Clerk's office of Wm. Nickell to Elkana Johnson and as in plats of division of the estate of Robert Nickell, Sr., deceased and Nellie Nickell, deceased."

Appellants, who are the children of Mrs. Burns, who died in August, 1921, claim under this deed.

On December 29, 1887, Mrs. Burns and her husband, in consideration of $2,450, conveyed the land, with general warranty, to the Hixon-Rodburn Lumber Company, who then took possession of it. The lumber company and the defendants, claiming under it, have since held the land, claiming it as their own.

The first question in the case is: What land was embraced by the deed of Elkana Johnson, above referred to. It will be observed that after the general words of description in the deed are these words, "the same land conveyed to me by Wm. Nickell and bounded by a deed now of record in the Rowan County Clerk's office of Wm. Nickell to Elkana Johnson and as in plats of division of the estate of Robert Nickell, Sr., deceased and Nellie Nickell, deceased." The only part of the estate which William Nickell received in the division was lots 1 and 2. He lived on this property and never claimed anything else, so far as the proof shows. It was known as the William Nickell land. The Rowan county clerk's office was burned in 1880 and all the old records were destroyed. The difficulty in this case arises largely from this fact. As we have seen, lots 5, 6, 7, and 8, which lay on the other side of the creek from the Nickell land, was the Hawkins property and this land was well known as the Hawkins' land, for he and his brother-in-law had lived there side by side since the division.

On March 22, 1881, H. G. Burns executed a deed to Elkana Johnson for the Hawkins land or lots 5, 6, 7, and 8, and in that deed, which was duly recorded, the consideration is put in these words:

"For and in consideration of a note secured by mortgage, bearing date of 12th day of March 1873, and of record in the Rowan County Clerk's office to secure the payments of nine hundred dollars owing by the party of the first part to the party of the second part and for the further consideration of eight hundred dollars to be paid to William H. Burns on a mortgage bearing date 1874, and of record in the Rowan County Clerk's office to secure the payments to said Wm. H. Burns by the party first of a debt of twelve hundred dollars, bearing interest from date of each of said mortgages, being on the land herein conveyed and for the further consideration of two hundred and fifty dollars in hand paid the receipt whereof is hereby acknowledged."

It is inconceivable that if Elkana Johnson owned this land in 1872, and had then conveyed it to his daughter and her children, he would have taken a mortgage on it on March 12, 1873, for $900, or that Burns would have put a mortgage on it in 1874, for $800, to William H. Burns.

It is insisted that the deed from George Johnson to Robert Nickel, made in 1810, is signed and acknowledged by James Christy as his agent, and that no power of attorney is shown. But the patentee has set up no claim to the land. Nickel and others claiming under him have held it for over 100 years, and under the ancient document rule the deed was properly admitted in evidence.

"The deed was more than thirty years old. The possession of the land had for forty years been consistent with its terms, and it was therefore admissible as an ancient deed proving itself on the theory that the witnesses were supposed to be dead, and it was impossible to produce testimony to show the signing, sealing and delivery by the grantor. This rule has been extended so as to admit ancient deeds purporting to have been signed by agents without the production of the power of attorney, the same reason that justified the introduction of an ancient deed, without proof of the signature of the witnesses or grantor, authorizing its admission without proof of the capacity in which, or the power under which, it purported to have been executed." Wilson v. Snow, 228 U. S. 220, 33 S. Ct. 489, 57 L. Ed. 807.

It is also objected that when the land of Robert Nickel was divided no deeds to the heirs for the shares allotted to them are shown. But the order of the county court shows that the report of division was ordered to be recorded. Regularly the court should have ordered deeds made pursuant to the division, but this error of the court, 75 years ago, does not affect the substantial rights of the parties after the long possession of the land under this proceeding.

The deed from William Nickel to H. G. Burns bears date August 1, 1861. On it is a certificate of Houston Logan, clerk of the county court, that it was acknowledged before him by the grantors on August 15, 1861; also his certificate that on that day the deed was duly recorded in his office. In addition to this, G. A. Johnson, clerk of the county court, certifies that on the 23d of November, 1892, the foregoing substituted deed was lodged for record and was on that day recorded by him. Clearly Johnson used the word "substituted" in the sense of re-recorded, or having in his mind that the record he was then making was a substitute for the old record. The facts are the same as to the deed from Moses Hawkins

and wife to H. G. Burns, which is certified by Cyrus Alley, county court clerk, to be acknowledged before him on October 20, 1863, and recorded by him on that day, and then Johnson adds the certificate that the foregoing substituted deed was lodged with him for record on November 23, 1892. The certificates on these deeds show that they are the original papers and not substitutes. There is nothing in the record impeaching the certificates in any way.

In the deed made in 1887, under which appellees claim, the parties of the first part are Anna Burns and H. G. Burns; the first parties convey the land with general warranty. It is therefore the deed of both and little weight can be given the fact that her name is written first in view of the fact that, in the deed they made at the same time to L. D. Oroark for a part of the land, his name is written first and hers follows his. The legal effect of the instrument depends on its terms, not on the order in which that grantors' names are written. The proof shows that the deed of March 1, 1872, is wholly in the handwriting of H. G. Burns. The subsequent conduct of both Johnson and Burns conclusively shows that they did not understand that deed to include the Hawkins land. This is, under the facts shown, the necessary meaning, too, of the terms of the grant. The circuit court was clearly right in so concluding on the facts.

It is insisted that though Johnson had no title in 1872, his subsequently acquired title passed under the deed by virtue of his general warranty made therein. But the warranty was only of the title to the property conveyed. It has no operation as to other property, and, the Hawkins land not being conveyed by the deed, the warranty was of no effect as to it.

It is also insisted that the deed from H. G. Burns to Johnson made in 1882 for the Hawkins land was of record in 1887, and that the purchasers had notice that the title to this land was in Johnson not in Burns. But this does not help appellants, as they claim only under the deed of March 1, 1872, and that does not include the Hawkins land.

It only remains to determine the rights of the appellants in the William Nickel land, or lots 1 and 2. The circuit court, after reaching the conclusion that the deed of March 1, 1872, only conveyed lots 1 and 2, held that there was no evidence showing that search had been made for a deed from William Nickel to Elkana Johnson or that such a deed was lost, and he continued the case

to give the plaintiff an opportunity to make search and show what the search revealed. The plaintiff having taken no further proof at the next term of the court, the action was dismissed. There is in the record no evidence at all that William Nickel conveyed this land to Elkana Johnson. The only evidence in the record is that he conveyed it to H. G. Burns and that Burns conveyed it to those under whom the defendants claim. Johnson had no adverse possession of the land as between him and Burns; for although he lived there for more than 15 years, Burns lived there too, both families living together. The fact that the deed of 1872 is in the handwriting of H. G. Burns is merely a circumstance. No estoppel arises by reason of it, for it was only a deed of gift and no consideration was paid. This might affect Burns, but it did not affect a purchaser from Burns, who, as may be presumed under the facts shown, had no knowledge of it. This is an equity action. No rule is better settled than that relief will be denied in equity where the plaintiffs have slept on their rights.

> "In every equity a party is not permitted to sleep over his rights, to the prejudice of the party on whom he makes a claim, and who by the delay may be deprived of the evidence and means of effectually defending himself. Therefore, a demand must be made within a reasonable time; otherwise the claim is considered stale, and a court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept on his rights and acquiesced for a great length of time. Nothing can call forth into activity a court of equity but conscience, good faith, and reasonable diligence. When these are wanting, the court is passive, and does nothing." 10 R. C. L. p. 388, sec. 138.

The proof shows without contradiction that when these parties lived on the land it was inclosed; there were cross-fences, the dwelling house stood in a nice yard with a garden inclosed and the usual outhouses, also fruit trees and the like, making a nice country residence. Now there is nothing left there but the stones of the chimney of the house. The fences are all gone. The house and the outhouses are all gone, all the apple trees, and not a thing left of what was a country home. Timber has been cut, thus showing that the purchasers from the beginning treated this as their property. While limitation

does not run against the remainderman, during the life of the life tenant, the person who holds under the life tenant may not commit waste, and if he commits waste an action may be brought by the remainderman against him. The reasonable inference from all the facts is that the Burns children well knew that their father and mother had sold this land, and they had reason to know that the purchaser was holding it as his own, and not as a life tenant. All this occurred more than 30 years before the bringing of this action. Time obscures all things. Facts that could easily be proved in 1887 cannot be shown now; for Burns and his wife are both dead, and so are others of that generation. The legal title, as shown by the record, is held by the appellees. After the great lapse of time, they cannot be disturbed in equity.

Judgment affirmed.