## County Board of Education for Jefferson County et al. v. Mill Creek Methodist Church, South, et al.

(Decided January 26, 1932.)

BURWELL K. MARSHALL and BURWELL K. MARSHALL, Jr., for appellants.

EUGENE R. ATTKISSON for appellees.

Opinion of the Court by Stanley, Commissioner—Affirming on cross-appeal and reversing on direct appeal.

The original petition in this suit filed by the appellees, Mill Creek Methodist Episcopal Church, South, and its trustees, against the appellant County Board of Education of Jefferson county, and its members, sought to quiet title in the plaintiff to certain property occupied by the defendant, and asked a recovery and possession of that portion of the land occupied by the school yard and buildings. There was an evolution from the petition in equity to an action in ejectment which was transferred to the common-law division of the Jefferson circuit court. The defendants traversed the claims of the plaintiff and asserted title in the board of education through adverse possession. Upon a trial there was a verdict in favor of the church except as to the ground covered by a frame schoolhouse and its outbuildings. It was adjudged that the plaintiff was the owner and entitled to the possession of all the property, including the school yard, occupied in part by a new high school building. Only the ground upon which the old schoolhouse and outbuildings stand was adjudged to the school board. An appeal is prosecuted by it, and a cross-appeal has been granted the church.

1. Appellants vigorously argue that it was error for the chancellor to permit the amended and substituted petition to be filed and to transfer the case for the subsequent proceedings at common law, as such constituted a change in the cause of action. This is premised upon the proposition that the original petition is purely and solely a suit to quiet title and the substituted pleading is a suit in ejectment. The appellees construe the original pleading as embracing claims to either or both remedies.

Section 134 of the Civil Code of Practice, authorizing amendments and corrections in pleadings in furtherance of justice, has been construed as prohibiting a departure or substantial change in the claim first asserted. But whether plaintiffs' or defendants' construction of the

original pleading be accepted, it seems to us, looking to the ends to be accomplished, that the court did not abuse the discretion vested in it by the Code provision. Departing from the ancient and original form, the action of ejectment, in the development of the practice, has become a favorite possessory remedy for the recovery of real property in substitution of older actions for that purpose. In later years the action has been used not merely to recover the possession of lands, but to quiet the title and establish the right of property, and the judgment when recovered is, as between the parties, conclusive evidence of that title. 9 R. C. L. 828. And while there is a recognized distinction, the two forms of actions are akin, and under the liberality of section 134 and other parts of the Code we do not regard the rulings of the trial courts to have been erroneous. Nugent v. Mallory, 145 Ky. 824, 141 S. W. 850; Louisville & N. R. R. v. Taylor, 138 Ky. 437, 128 S. W. 325; Turner v. Johnson, 93 S. W. 1038, 29 Ky. Law Rep. 543; Reynolds v. Binion, 177 Ky. 189, 197 S. W. 641. Certainly the substantial rights of the appellant were not prejudiced, and the case could and may well be decided on the pleadings as a whole.

2. The parcel in controversy was a part of a thousand-acre tract patented in 1790 by the commonwealth of Virginia to Wm. Pope and was conveyed by him to Christian Shively on May 7, 1793. On June 17, 1816, Shively conveyed one acre of land in the form of a square to Isaac Miller and five others named, "trustees for a church to be erected and called and known by the name of Mill Creek Church." The stated consideration was one dollar and "the public good." The conveyance was declared in the deed to be to the named men, "trustees as aforesaid and their successors in office and for the purposes in a certain subscription and its supplements annexed." The habendum was to them "and their successors in office and for the purposes above attended to." It is to be noted that no religious denomination was mentioned in the deed. Nor is there any reference to schools or school purposes. There is nothing in the record tending to show what the "certain subscription and its supplements annexed" were or by whom made. Search of the records revealed no subsequent conveyance of this property or any part of it.

Although the deed called for a square 208.98 feet each way, it does not appear that it was so laid off. The lot was laid off in the form of a rectangle, and it is now identified as being 125 feet wide with the longer parallel lines 260.7 and 299 feet respectively, containing eight-tenths of an acre, and appears to have been under fence practically the whole time. It embraced land not contained within the deed description and omitted land on the northeast of the square. But from time immemorial this rectangle has been regarded as the Shively conveyance rather than the area described in his deed.

While the title and right to exclusive possession by the church of the southwest 79 feet of this tract is not made an issue by the pleadings in the case, the school board denied in evidence the church's title to the entire parcel. It is their argument that the conveyance by Shively was for a union or community church, such as was common to the early days of the state, and that the Methodist Church has no exclusive right to the property either by record title or prescription. It is submitted that since no successors to the original trustees were ever elected, title descended to their heirs for the benefit of a community church, and the court of equity may now appoint trustees to carry out the trust. The appellees' claim is that this was intended to be and has continuously been a Methodist Church, and that that society has had without challenge the actual, exclusive, and aggressive possession of the whole lot with continuity from the beginning, and that the present trustees of that church are the direct successors of those designated in the Shively conveyance. It is further claimed that the occupancy of a part of the lot by the schoolhouses has been at all times by grace and permission of the church authorities.

The evidence tended to prove that the grantor, Christian Shively, was a member of the Methodist Church, as certainly were three of the named trustees. As to another the evidence was conflicting, but the better proof is that he too was a Methodist. Of the other two, one was a Presbyterian and the other an Episcopalian. In 1816, a small stone church was erected on the north end of the lot. In 1848 that building was replaced by the present brick structure, and the original corner stone bearing that date put in the foundation. In the gable a

stone with this inscription is to be found: "Mill Creek M. E. Church, Built 1848." A number of elderly witnesses living in the community testified that as children they knew this as the Mill Creek Methodist Church, and it has always been so regarded. It is certain that for many, many years the Methodist Society has claimed ownership of the property, although there is some evidence, principally based upon tradition, that this was known as a neighborhood church with the general understanding that other denominations had the right to use it. From the earliest times it was on a regular Methodist circuit, although the building was occasionally used by other denominations. It was also used by a debating society. However, for many years the other congregations have ceased to use it and have had independent organizations and separate buildings in the community.

One witness belonging to a church of another faith testified that in the old days each preacher would bring his own coal for the fires. Counsel for the other side point out that this was very improbable, as in those days coal was a very scarce article in the country and everybody burned wood, of which there was an abundance. This witness testified that about 1902 the Methodist people nailed up the church door, but he opened it and went into the church and held a service all by himself. He alone says that at one time there was a fence with gates which divided the lot into two parcels.

Some time after the erection of the church, a schoolhouse was built on the Shively lot. A grandson of one of the original grantees testified that the church was also used as a schoolhouse for a while, but ever since he was born (1858) there had been a separate schoolhouse on the north end of the lot. There is some evidence that at one time there was a line of trees between the two buildings which was regarded as marking the boundary. A locust tree stood on the northwest line at this point, and in later years that was understood by many to be a boundary marker. At least, it was pointed out to one of the school officers as such some twenty years ago. Although in recent years this line has not been marked, it appears that it has been regarded as the division line between the school and church yards. In 1905 when a new frame schoolhouse was to be erected on the same site, it appears the right of the school board to it was

informally questioned, but the board proceeded with the work under a claim of right.

In 1922 the board of education acquired adjoining property and erected a substantial school building on it and projecting over on the Shively lot in front of the old frame schoolhouse. The encroachment is about 22 by 40 by 53 feet. The pastor and some of his people seem to have informally discussed this encroachment also at the time, but no notice was served on the school board or any action taken to prevent it. This, they say, was because they did not know exactly the church lot boundaries. Later the school board served notice upon the church authorities to keep off the school lot, which they construed as being 46 feet of the northeast side of the whole parcel, that being the distance between the northeast boundary of the Shively lot and a line drawn equidistant between the church and the old schoolhouse. That notice precipitated this litigation.

Now, the important thing is one about which all parties seem to be agreed, and that is that this entire lot not occupied by the buildings has been used for many years by both the church and the school without any special interference on the part of either. The school children used it all as a playground, although principally confined to the eastern or northeastern part, which is that claimed by the school board. On the other hand, that part of the lot was used for hitching the horses of those attending church services and the members of the church used the entire lot at their pleasure. It, therefore, very clearly appears that as to the church and the older school building and the ground on which both are situated each party has had exclusive occupancy under a claim of right for a period of more than sixty years. The verdict and judgment awarding the schoolhouse ground to the defendant, however, is incongruous, for the right of ingress and egress over the rest of the lot was a necessary appurtenance thereto.

As to that part of the lot involved in the suit, it is clear the plaintiffs failed to establish possession exclusive of defendants. There was a mixed possession. It is made to appear that both parties have used it jointly and indiscriminately, unless perhaps in very recent years, without any claim of exclusive ownership or right of occupancy. Both parties, however, held it adversely to the rest of the world.

It is not necessary to determine whether the original grant should be construed as vesting title in the Methodist Church, or whether the lot was set apart for a union church and community purposes by a public benefactor. It is certain that the Methodist Church pre-empted it long ago. It possessed the property used by it at least under a colorable title which ripened into a perfect title. If that should be construed as embracing the entire Shively tract and that the school authorities did not acquire the same right in the same way to the part claimed by them, it is certain that they acquired the right to use it from the church people through prescription.

3. The argument is advanced by the appellee that the Shively conveyance was a gift to a charitable use and a specific and continuing trust, and that the property may not, therefore, be diverted from church or religious purposes to that of secular education through adverse possession or otherwise; that upon such departure title to the property would revert to the heirs of the grantor.

In response it may be pointed out that while the grantees are designated as trustees of a church to be erected on the lot, the consideration was "the public good" as well as $1, and the conveyance was "for the purposes in a certain subscription and its supplements annexed." As to what the purposes of that subscription and its annexed supplements were we do not know. The deed recites a money consideration, nominal it is true, but nevertheless a valuable consideration. It purports to convey the absolute title with a warranty thereof. It contained no declarations of an express, continuing trust. Though conveyed to trustees, it was not upon any condition precedent or subsequent, upon the happening of which the vesting or loss of the title was to depend. It is not provided that the church should be continued in perpetuity. The deed contains no terms of reverter in the event the property should be diverted to uses and purposes other than those specified in the grant, which were, apparently, primarily the erection of a church to be known as the Mill Creek Church, and some additional purpose not expressed but comprehended by its peculiar language. The established rule is that when the conveyance is of that character it will not be construed to create an estate on condition, but such clauses, even when doubtful, will be held to be a covenant only. Board of Councilmen v. Capital Hotel Co., 188 Ky. 754, 224 S. W. 197;

7 R. C. L. 1086. The stipulations in this deed are not as definite nor the purposes as specific as those contained in a deed of dedication for a school, construed in Carroll County Academy v. Gallatin Academy Co., 104 Ky. 621, 47 S. W. 617, 20 Ky. Law Rep. 824, and held to be a covenant and not a condition subsequent, the breach of which by an abandonment of the school not constituting a forfeiture or resulting in reversion to the grantor's heirs. In annotations to Rooks Creek Evan. Lutheran Church v. First Lutheran Church, 290 Ill. 133, 124 N. E. 793, 7 A. L. R. 1422, the distinction between a condition and covenant in a grant of land for church purposes is treated. See also Fuquay's Heirs v. Trustees of Hopkins Academy, 58 S. W. 814, 22 Ky. Law Rep. 744; McElroy v. Pope, 153, Ky. 108, 154 S. W. 903, 44 L. R. A. (N. S.) 1220; Easum v. Bohon, 190 Ky. 451, 202 S. W. 901. L. R. A. 1918D, 1144; Board of Councilmen of City of Frankfort v. Capital Hotel Co., supra; National Finance Corporation v. Robinson, 193 Ky. 649, 237 S. W. 418. The terms of the deed constituted a covenant and not a condition subsequent. A "covenant" is an agreement to do or not to do a particular act in the future. A "condition" in a deed is something inserted for the benefit of the grantor empowering him upon default of performance to destroy the grantee's estate and revest it in himself or his heirs. The chief distinction between the two stipulations pertains to the remedy in the event of a breach. For a violation of a covenant, in a proper case, specific performance may be enforced, or damages may be recovered thereof, while the breach of a condition subjects the estate to forfeiture. 2 Words and Phrases, Second Series, 660. So if the trustees in the conveyance before us lost title through adverse possession, they violated their covenant in the same manner as if they had diverted the property from the stated purposes through a formal deed, for which breach of trust they would perhaps have been answerable to those entitled to its benefits before the statutes of limitations saved them. But it cannot be said that the title acquired by such a grantee or through adverse possession was a nullity. National Finance Corporation v. Robinson, supra. In 24 American and English Encyclopedia of Law, 362, it is said:

> "A religious corporation may acquire title to land by adverse possession and a title thus acquired is not cumbered with any equitable trusts which may

have been in force prior to the date on which the adverse possession began."

Perhaps that is too broad a statement; but all authorities are to the effect that trustees of a religious society may acquire title to property by adverse possession. Deepwater Ry. Co. v. Honaker, Trustee, 66 W. Va. 136, 66 S. E. 104, 27 L. R. A. (N. S.) 388.

We may note a few other authorities which support generally the conclusions reached:

In Baptist Church at Lancaster v. Presbyterian Church, 57 Ky. (18 B. Mon.) 635, a lot of ground was given and dedicated "to and for the use of the general public as a burying ground, and to and for the use of all religious denominations professing the Christian faith— Roman Catholics and Shakers excepted." A church was erected thereon by public subscriptions and used and claimed by different sects for many years. Subsequently, a few years before the institution of the suit, the Presbyterian, Baptist, and Christian denominations provided themselves with houses of worship and voluntarily abandoned and ceased to use the old building. It was held as to the three denominations mentioned: "Their voluntary abandonment of the house in contest was an implied, though unequivocal renunciation of their right to its use, and operated as effectually to divest the right they had acquired, under the original donation, as if such renunciation had been expressed in the most solemn form. As to them the purposes of the trust had been accomplished, for the time being." And further held that the Methodist Episcopal Church, South, which had no separate place of worship, was entitled to the use of the church and to enforce a compliance with the object of the dedication and trust.

In Singleton v. Trustees School District No. 34, 10 S. W. 793, 10 Ky. Law Rep. 851, where trustees of a school claimed title through adverse possession from the time of a parol dedication, the acceptance of which was shown by the building of a schoolhouse on the lot and its use for school purposes continuously thereafter, it was held that the use of the premises for such length of time each year as school was taught should be regarded as actual, continuous, and adverse possession so as to give it title.

In some phases of this case the opinion in City of Franklin v. St. Mary's Roman Catholic Church, 188 Ky. 161, 221 S. W. 503, is in point. In 1870 the city of Franklin acquired a twenty-acre tract for use as a cemetery. Six acres were separated by a roadway and set apart for a Catholic cemetery, although no deed thereto was executed to the Catholic authorities. In time only a small part of this had been so used, while the Protestant cemetery, occupying the remainder, had nearly filled up and it was the purpose to use a part of the six acres as an addition thereto. It appears that the space then occupied in the Catholic portion by burial lots was less than an acre and that not as much as two acres would ever be needed for the burial of the adherents to that church. The remainder of this portion at different times had been rented out by the Catholic people for the purpose of keeping it clean of weeds. They claimed the entire six acres through adverse possession. While it did not appear that they had ever asserted title to the land through speeches and talk, that was held immaterial, since the doctrine of adverse possession rests on the acts and conduct of the claimant and not on his oral assertions, although they are regarded as competent evidence on the issue. Such was the affirmative conduct of the school authorities in the case at bar. It was also declared in the opinion that where the owner of land (assimilated to the Methodist Church here) permits another to enter upon and take actual possession of and exercise actual ownership and control over the property in the open and public manner in which the Catholic Church did in that case (and the school board in the instant case), it will give to such person the right to hold the same under the doctrine of adverse possession.

In this case it is clear that both parties openly and publicly used the lot jointly one with the other. They both had it in actual physical possession except that part upon which the buildings rested and that alone was used exclusively by the school. While it is held that two persons claiming title may not be in constructive possession at the same time [Everidge v. Martin, 164 Ky. 497, 175 S. W. 1004; Moren v. Houston, 222 Ky. 785, 2 S. W. (2d) 667], that rule does not apply to an actual physical occupancy of the property. Irvine v. Irvine, 89 S. W. 193, 28 Ky. Law Rep. 262; Burns v. Dillon, 226 Ky. 82, 9 S. W. (2d) 1095.

As to the small portion of the lot occupied by the new school building, it is admitted that the church authorities stood by and, without manifesting any' objection, permitted its erection on the lot and thereby tacitly consented to its exclusive occupancy. We think the manifestations of the school authorities then and before that time were amply sufficient to put the church on notice of their claim of right. He who is silent when he should speak will not be heard when he would speak, is an ancient and wholesome doctrine. The equities of the case do not authorize a restoration of that part to the joint occupancy. Alexander v. Woodford Spring Lake Fishing Co., 90 Ky. 215, 14 S. W. 80, 12 Ky. Law Rep. 107; Finlayson v. Cuyuga Coal & Coke Co., 173 Ky. 763, 191 S. W. 486.

The evidence that the occupancy by the school board of this lot was a permissive one on the part of the church is of negligible value—consisting merely of expressed opinions. Upon the point on which the case turns, there was no contrariety of evidence, and the court should have peremptorily instructed the jury accordingly.

The judgment on the cross-appeal is affirmed. On the direct appeal it is reversed and remanded for consistent proceedings.