**Mattie H. COLE, Appellant,**

v.

**W. B. FRAZIER, Appellee.**

Court of Appeals of Kentucky.

June 17, 1955.

J. J. Tye, Charles G. Cole, Jr., Earl L. Cole, Barbourville, for appellant.

Victor A. Jordan, Barbourville, for appellee.

STANLEY, Commissioner.

The controversy is over the line dividing a lot of the appellant, Mattie H. Cole, and a lot south of it of the appellee, W. B. Frazier. The property is on U. S. Highway No. 25E, near or within Barbourville. As adjudged, the line runs through a gasoline

532

filling station building principally on Mrs. Cole's lot.

All the property involved directly or by reference was formerly owned by Samuel Hays. On November 12, 1929, for a lump sum consideration, Samuel Hays executed to the Kentucky Utilities Company an "Easement Agreement" granted to the company for an indefinite period a lot 50 feet square on the highway for the erection and maintenance of an electric "transformer station." This lot is on the north side of the lot now owned by Mrs. Cole. The company erected a concrete wall around the lot or at least on the side next to the Cole lot.

Samuel Hays devised the involved and the related land to three children, but one of them sold his interest to his sister and brother, Mattie H. Cole and Marcellus Hays. While the land was undivided, on July 21, 1936, Mattie and Marcellus leased a lot for a period of ten years with the right of extension to Robert E. Viall for the erection of a gasoline filling station on it. The lot is described as 120 feet fronting the highway and running back between parallel lines 200 feet. The beginning point is stated as a stake on the highway "at a point ten feet south of the southwest corner of the concrete abutment or retaining wall around the substation of the Utilities Company." Thereafter, on October 17, 1936, Mattie and Marcellus respectively executed deeds of partition of the land they had been holding undivided. A part of the filling station lot, as described in the lease, was conveyed to Mattie. It is described in the partition deed as bordering the highway 77 feet 3 inches and running back 100 feet. The description, however, is by courses and distances. The beginning point is stated to be "the corner of the Utility station on the edge of the highway" and runs northwardly with "the line of the substation." The land south of this lot was deeded to Marcellus Hays. This deed calls also "for a frontage of 77 feet 3 inches" and one of the points is "to a corner of Mattie Cole." On April 5, 1950, Marcellus Hays conveyed the lot to the appellee, W. B. Frazier. The begin-

ning point is "Mattie Cole's corner" which is stated to be 60 feet south of the substation corner. It is to be noted that this does not harmonize with Mattie Cole's description of a 77 feet 3 inches lot south of the substation corner. The boundary line between these lots is in controversy.

The evidence goes back several years to the acquisition of all the area by Samuel Hays and to his conveyance in October, 1929, to Walter Hignite, of a parcel north of the substation lot. The best we can understand, the true location of the lines of the substation lot is brought into this dispute as affecting or determining the proper line. But it seems to us that whatever that may be, according to the conveyances,—a few feet one way or the other— the retaining wall erected around that lot in 1929 or 1930, during the lifetime of Samuel Hays, must be accepted as the starting point in fixing the line in controversy. Three surveyors undertook to establish the true line. Two of them, J. T. Williams and Roy Ballard, Jr., testified in behalf of the appellee, Frazier. They differed eleven inches in their respective locations. According to their testimony, the rear corner of the filling station building is 8 feet 4 inches or is 9 feet 3 inches over on the Frazier line. A. V. Seay, testifying for the appellant, put the boundary line 13 or 14 feet to the south of that fixed by the other surveyors. If that is correct, the rear corner of the filling station building is 5 feet 6 inches from the line and wholly on Mrs. Cole's property.

The court accepted the line as fixed by surveyor Williams, who seems to have a better acquaintance and greater experience in surveying the several parcels whose boundaries affect the particular problem. He had made the survey for the partition deeds. It appears that Williams for the present case did not actually survey all the related property but prepared his map from previous records. He did survey the particular lots in controversy. He used specially for fixing the controversial line the concrete retaining wall or abutment of the substation lot on the assumption that it was on the true line. Surveyor Seay be-

gan with a 1901 deed from Samuel Hays' predecessor to the L & N Railroad Company and continued with several conveyances and the establishment of various corner lines, few of which were marked by monuments. The result of his extensive surveys is, as stated, favorable to Mrs. Cole. She, as appellant, maintains that this comprehensive survey should be accepted by the court and the concrete wall or abutment ignored since it was not referred to in any of the previous deeds. We observe that while that object was not mentioned in the partition deed from Marcellus Hays to Mrs. Cole, that deed did call for the corner of the substation lot as the beginning point. The wall had been mentioned in the previous lease of that lot to Viall.

It seems to us the whole case is and should have been simplified by both parties accepting the concrete wall or abutment as being properly located. Not only did their father but they themselves, as well as the owner of the substation lot, recognized and acquiesced in it without question since early in 1930, a period of 22 years before this suit was instituted.

The line fixed by the court in his opinion-judgment puts 16 inches of the front and 9 feet 3 inches of the back of the filling station building on Frazier's lot, thus dividing the building. The court adjudged that neither Mrs. Cole nor her lessee has "any interest, right or claim or title" to the lot and part of the building shown to be on Frazier's lot. It is not to be overlooked that when this building was erected the lease covered 120 feet. The present condition is due to the fact that Mrs. Cole acquired in the partition only 77 feet 3 inches of the leased property.

Both parties pleaded adverse possession, and Frazier pleaded that Mrs. Cole was estopped to deny his claim to title by prescription. The court ruled in favor of Frazier on these points. The respective claims and the judgment rest on the several leases of the filling station lot. As above stated, the first lease was made by Mrs. Cole and Marcellus Hays in 1936 when they jointly owned the area and before the build-

ing and other improvements were erected. It covered 120 feet frontage. Although in the partition deeds made a few months afterward Mrs. Cole received 77 feet 3 inches and the balance of 42 feet 9 inches was included in the parcel Hays received, it appears they continued to divide the annual ground rental of $120 equally. When that lease expired, in 1947, Mrs. Cole and her husband executed a lease for five years to E. H. Boyd for $82.50 a month. The description is of a filling station property lying between the electric substation and the property of Marcellus Hays. The lease contained the provision that the property being rented "is only so much of said property which is owned by the above first parties * * * and no attempt is being made to lease or rent any of the adjoining property of Marcellus Hays." When that lease expired, Mrs. Cole and her husband executed a five year lease beginning in January, 1952, to R. C. Miller. The rental is one cent a gallon for gasoline sold plus $25 a month. It contained a similar general description of the property but not the express stipulation. However, it specified that the lease included "all drives and approaches now owned or under control of first parties." Mrs. Cole testified that she had never divided the rents from the two later leases with either her brother or Frazier. Frazier testified that he had received part of the rentals since he became the owner of the adjoining lot, and undertook to say that his predecessor, Marcellus Hays, had done likewise. Frazier's testimony is indefinite and seems to be colored by ill temper. It seems that he had separate agreements with the respective lessees and collected $17.50 a month from each of them. This apparently was for the portion of the 120 feet leasehold conveyed to him in 1950, namely, about 43 feet.

█ During at least the period from 1947, which was within ten years of the partition deeds, Mrs. Cole recognized that Marcellus Hays (who appears from his testimony not to be too friendly with his sister) and his grantee, Frazier, were making some claim to part of what she re-

garded as her lot. It appears, however, that beginning with the lease to Boyd in 1947, both Mrs. Cole and her lessees regarded the building as being embraced therein. She spent some money during the period in repairing and improving it, and it does not appear that either Hays or Frazier ever made any special claim to the building or the rents therefrom. But whether her claim to the building was challenged or not, since it continued for less than six years, of course, Mrs. Cole acquired no title by adverse possession. We do not think, therefore, that either party proved title by adverse possession of the strip of land in controversy. Both parties, through their tenants, were in actual possession of it. Cf. County Board of Education v. Mill Creek Methodist Church, 242 Ky. 147, 45 S.W.2d 1026. This is not a case "wherein there is no such common, joint, mixed, or concurrent possession by claimant and owner as to prevent the possession of claimant from being exclusive." 2 C.J.S., Adverse Possession, § 48.

The question, therefore, is resolved into whether the division line fixed by the court as a matter of fact is sustained by the evidence. We think it is.

In the beginning of the litigation, an agreed order was entered that Mrs. Cole's lessees should pay half the rentals to her and the other half to a bank to be held in escrow until the case should be finally determined. The judgment awards this half to the appellee, Frazier. The appellant contends that in any event this is erroneous since the line fixed gives to Frazier only 14 feet of the lot as claimed by her and about five feet (mean measurement) of the building, which is diagonal to the line. We agree that Frazier should not have been awarded any of the rentals in excess of his proportionate part of the property adjudged to belong to him. As we understand it, the judgment gives Frazier 8 or 9 feet of the lot Mrs. Cole has been leasing. He is entitled to recover of her only the sum of rentals in the ratio which that figure bears to the total width of the lot under lease instead of one-half the rentals. We think the judgment for more than that proportion is erroneous.

That part of the judgment fixing the boundary line is affirmed. That part which awards to the appellee more than his proportion of the accrued rentals is reversed.