## VELMA CASHEN v. SAM M. OWENS.[1]

November 7, 1947.

No. 34,412.

[1]Reported in 29 N. W. (2d) 440.

*Bourgin & Koski* and *Roy L. Sanford,* for appellant.

*Stone, Manthey & Carey, Thomas J. Naylor,* County Attorney, and *John T. Naughtin,* Assistant County Attorney, for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action for conversion of certain corporate stock sold by defendant as sheriff of St. Louis county under an execution and levy made thereon. Plaintiff met with adverse findings by the trial court. Her alternative motion for amended findings or a new trial was denied except as to matters not material here, and she appealed from that order. Plaintiff challenges "particularly that portion of the Court's order denying Plaintiff's motion to amend the Findings of Fact, * * *."

There is no substantial dispute as to the facts, and they are summarized as follows: Plaintiff was divorced from her husband on March 24, 1942, her husband bringing the suit. She did not contest the case, which was heard and determined as one of default. Before the entry of the divorce decree, plaintiff and her husband agreed in writing as follows:

"So long as Leo William Cashen shall own the seventy-seven shares of Petroleum Products Company stock which he now owns, he shall pay one-half the dividend to Velma Cashen; and, if and when Leo William Cashen shall sell said shares of stock or any of them, he shall account to Velma Cashen for one-half the proceeds of said sale; and to carry out the provisions above, Velma Cashen

shall have a lien on the dividends payable and also on the shares of stock in said corporation in accordance with these provisions."

This agreement was incorporated into the findings and the divorce decree. Plaintiff has never had possession of any of the certificates of stock, as they have been held by the Petroleum Products Company, the corporation issuing them. (We shall hereinafter refer to it as the company.) Antedating the entry of the divorce decree, the stock certificates had been pledged by plaintiff's husband, who was then the sole owner thereof, to various persons and institutions, including the company, as security for his personal obligations. The company has succeeded to all the rights of the original pledgees, and it has at all times here material had possession and still retains possession of these certificates. That these certificates had been "duly pledged" conclusively appears. Plaintiff does not charge fraud, deceit, or overreaching on the part of the company or anyone else in the sheriff's sale. Nor is the sheriff's official conduct in connection therewith challenged.

On September 25, 1945, the company obtained a personal judgment against the husband for $7,629.65. This amount represented various loans to the husband which were made by or assigned to the company in due course and for value. An execution upon that judgment was thereupon duly issued and delivered to defendant to enforce. Pursuant thereto, he, as sheriff, levied upon the shares of stock involved in this litigation and sold them at public auction, the company being the purchaser. The total sale price was $5,163.75. Thereby, the judgment debt was reduced in that amount, less the sheriff's fees, which are not questioned by plaintiff. In her present action, both at the trial and here, she asks only for "one-half of the proceeds from that sale less the expenses and fees of the sheriff in connection therewith." The sale did not bring enough to pay the amount of money owed by the borrower on the pledged stock.

Plaintiff's brief is devoted almost exclusively to the refusal of the court to amend its findings so as to agree with her contentions. As to a new trial, plaintiff states that in the event the court sees fit to deny the motion for amendment of the findings "Plaintiff will

move the Court for a new trial" on the ground that the findings are contrary to the facts and to law.

 First to be considered and determined is what is before this court for decision. We have held in many cases that an order denying a motion for amended findings is not appealable, whether accompanied by a motion for new trial or not. Julius v. Lenz, 212 Minn. 201, 3 N. W. (2d) 10. As held in Marty v. Nordby, 201 Minn. 469, 471, 276 N. W. 739, 740:

"The statute authorizes an appeal from an order denying a motion for new trial. Defendants' appeal brings up only that part of the order denying their motion for new trial. A nonappealable order is not rendered appealable because it is coupled with an appealable order. An order appealable in part and nonappealable in part will present for review only that part which is appealable. In such a case the nonappealable order or the part of the order which is nonappealable will be disregarded, and only the appeal from the appealable order or the part which is appealable will be considered."

 The only issue remaining is whether the company, by reducing its claims to judgment and purchasing the stock at execution sale, thereby waived its rights as pledgee. The company has at all times here material had possession of the stock as pledgee. If the stock had been sold to another at the sheriff's sale, could it be said that thereby the rights of the company as pledgee were wiped out? We think not. In such event, as to the pledgee, its rights in connection with the stock would have remained unimpaired. The security afforded by the pledge remained in the possessor of the property until the debt secured thereby was paid.

The trial court deemed the question to be one of fact, and it determined that issue in defendant's favor. Clearly, then, the problem here is whether such finding is supported by the evidence. We think that the recited facts clearly point the way. The reason for the trial court's conclusion was that when the agreement was made between plaintiff and her husband the very property upon which her rights depended was hypothecated as security for the husband's debts, and

by reason thereof her rights were "subsequent and subservient to the rights" of the creditor pledgees.

In First Nat. Bank v. Flynn, 190 Minn. 102, 106, 250 N. W. 806, 808, 92 A. L. R. 1272, we said:

"The purpose of the doctrine of election of remedies is not to prevent recourse to any remedy but to prevent double redress for a single wrong." We deemed the issue there presented to be closely analogous to "the settled rule of real estate mortgage law that the remedies on the mortgage note, if any, and on the mortgage are concurrent. 'The creditor may resort to either or both, but he shall not take double satisfaction of the debt.' Bean v. Heron, 65 Minn. 64, 66, 67 N. W. 805, 806."

We recited that the doctrine of election of remedies, which had its origin in Roman law, should be applied upon the equitable maxim that he who seeks equity must do equity. Therefore (190 Minn. 107, 250 N. W. 808):

"* * * In spreading from its original field of inconsistent gifts into that of alternative rights and remedies generally, it has come naturally and properly to be regarded as 'an application of the law of estoppel.' 9 R. C. L. 957.

"* * * But where there are inconsistent remedies and but one right and it is doubtful which remedy may ultimately bring relief, it has been said a party 'may follow one even to defeat, and then take another, or he may pursue all concurrently, until it finally is decided which affords the remedy. * * *'" (Italics supplied.)

And we quoted from Friederichsen v. Renard, 247 U. S. 207, 213, 38 S. Ct. 450, 452, 62 L. ed. 1075, 1084, that "at best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended." We also considered the case of J. I. Case T. M. Co. v. Johnson, 152 Wis. 8, 10, 139 N. W. 445, 446, and adopted as the correct rule to be applied in cases of this type the following holding of the Wisconsin court under an identical state of facts:

"There can be no waiver without actual or implied intent to waive. That is elementary. The intent may be actual, or conclusively presumed from conduct without any element of estoppel. That also is elementary. Such intent is conclusively presumed when a party chooses one of two plainly inconsistent remedies. Such is not the case in the circumstances in question. The mortgagee's pursuit of the interest in the mortgaged property retained by his mortgagor, is consistent with intention not to surrender his mortgage interest."

So in this case. The holder of the pledged stock has clung to it continuously as the means of making good the pledgor's promise. The record does not disclose that the company has by actual or implied intent waived any of its rights under the original pledges. At all times since acquiring the stock, it has had physical possession of the certificates as pledgee or assignee of the original pledgee. And plaintiff in her brief concedes that this is so, for she says:

"* * * The reason for not transferring title to one-half the shares to Appellant [plaintiff] was the restrictions in the by-laws that no stockholder could sell or transfer his stock until he had first given the corporation and then the other stockholders the opportunity to buy same at book value. But for those provisions, it is safe to assume that the decree would have transferred title to one-half of the shares of stock to Appellant [plaintiff], *subject, of course, to any valid prior liens thereon.*" (Italics supplied.)

We think that the trial court correctly disposed of the case and that its order should be affirmed.

Affirmed.