## UNITED STATES v. HAYNES SCHOOL DIST. NO. 8.

### Civ. A. No. H–412.

United States District Court
E. D. Arkansas, E. D.
Dec. 13, 1951.

James T. Gooch, U. S. Atty., Harry E. McDermott, Jr., Asst. U. S. Atty., Little Rock, Ark., for plaintiff. ·

Hal Mixon, Marianna, Ark., for defendant.

LEMLEY, District Judge.

This cause comes on for hearing upon opposing motions for summary judgment filed by the respective parties, and also upon that portion of the defendant's answer which alleges that the complaint fails to state a claim against the defendant upon which relief can be granted [1], and has been submitted upon the pleadings, affidavits, exhibits, and written briefs. In our opinion the plaintiff's motion for summary judgment should be overruled, and the defendant's plea just referred to should be sustained, subject to leave to the plaintiff to amend its complaint as hereinafter set forth; for the reasons hereinafter stated, we do not deem it necessary to pass upon the defendant's motion for summary judgment.

This is an action brought by the United States against Haynes School District No 8 of Lee County, Arkansas, to recover the sum of $602.71, plus interest and costs, paid to the District by the plaintiff between September 11, 1945 and April 8, 1946 in connection with the so-called "school lunch program", authorized by the Department of Agriculture Appropriations Acts of 1945 and 1946, 58 Stats. 452–453 and 59 Stats. 157, see also 7 U.S.C.A. § 612c and in which the defendant participated during the 1944–45 school year and during the 1945–46 school year from September 11, 1945 through March 30, 1946. Under the terms of this program the federal government reimburses participating school districts for funds expended by them in buying food to be used in serving lunches to school children, the extent of such reimbursement depending upon a formula devised by the Department of Agriculture and set forth in the agreements entered into between the Government and the participating districts.

The original agreement between the parties hereto was dated September 11, 1944 and expired by its own terms on June 30, 1945; on September 11, 1945, it was renewed for the 1945–46 school year and finally expired on June 30, 1946. While no copy of the agreement was attached to the complaint as an exhibit, it was referred to in said pleading, and Article VII thereof, upon which plaintiff relies, was set out in full. Copies of the entire agreement and its renewal have now been filed as exhibits in connection with the motions above referred to.

As stated, the defendant participated in the school lunch program during the 1944–45 school year and during the 1945–46 school year up to and including March 30, 1946; during the latter year seven consecutive monthly claims for reimbursement amounting to $602.71 were submitted by the defendant, and all of them were paid by the plaintiff. This suit has been brought to

---

[1]. The defense that the complaint fails to state a claim upon which relief can be granted may be raised either in the answer or by motion to dismiss. Federal Rules of Civil Procedure, Rule 12(b), 28 U.S.C.A.

recover these payments on the ground that the defendant was required to keep and preserve certain records pertaining to the operation of the program, and that when an auditor of the Department of Agriculture undertook to examine its records in November of 1946 and again in the spring of 1947, the defendant was unable to produce such records, and that, therefore, the entire sum of $602.71 was "overclaimed" and "overpaid", and should be refunded to the Government.[2]

The contract between the parties consisted of ten numbered "Articles", not all of which are important here. The first Article is a declaration of the purpose of the agreement, which is described as the operation of a "Community School Lunch Program", as a part of the nation's wartime food program, "to assist schools and child-care centers in the development and maintenance of an adequate lunch program, which will assist in meeting the nutritional requirements of the Nation's children; to provide for the proper utilization of agricultural commodities purchased through price support programs; to encourage increased consumption of foods in abundance; and to aid American farmers in the long-term development of better domestic markets for agricultural commodities".

Article III of the Agreement provides that the Government will reimburse the school district, in accordance with a specified formula and subject to certain limitations not here pertinent, "for the purchase cost of food used in accordance with this agreement in the preparation of meals served to children attending or visiting the (participating school.)"

Article IV obligated the district to purchase food for the program at prices no higher than those generally prevailing in the area, and, as far as possible, to buy locally produced food; this Article also obligated the District to buy in as large quantities as were feasible foods which the War Food Administration should from time to time announce as being in abundance, to encourage, as far as possible, the maximum consumption of such foods by the children, and to accept such foods as might be donated to it by the Administration if such foods could be utilized, and if transportation and handling made such acceptance possible. The District was further required to maintain adequate facilities for storing, preparing, and serving food bought under the Agreement or donated by the Administration, and to maintain "proper sanitation and health standards in conformance with all applicable laws and regulations".

By Article VI the District was required to offer meals to all children attending school, and was required to serve meals without cost to children who were unable to pay for them. This Article further provided that: "No distinction or segregation of any sort shall be permitted between paying and non-paying children;" and, that: "All funds accruing from the operation of the program shall be used only in the maintenance of the program in reducing the price of meals to paying children, or in improving the quality of the meals."

The most important Article in the Agreement, as far as this case is concerned, is Article VII, which deals with "Claims, Reports, and Records". This Article provided that the District should "submit to the Administration monthly, as its claim for reimbursement and report of operations a certified statement on Form FDA–536." It was further provided that the District should maintain or cause to be maintained "full and complete records of all operations under this agreement, which records shall include the following: (a) the number of meals, by type, served each day; (b) the number of meals, by type, served free each day; (c) income accruing as a result of payments made by children and all other income, in money or in kind, accruing as a result of the operation of the program; (d) itemized receipts for all food purchased for the program; (e) all program expenditures for items other than food; and (f) receipt of commodities from the Administration." It was further provided that: "The (school district) shall make available to the Administration for exam-

---

2. No recovery is sought with respect to claims paid during the 1944–45 school year.

ination, at any reasonable time and place, all records pertaining to the operation of the program."

Article X provided for termination by either party at will upon the giving of ten days' notice to the other, and further provided that the Administration "may cancel this agreement immediately upon receipt of evidence that the terms and the conditions of this agreement are not fully complied with by the sponsoring agency."

The first of the claims here involved was dated October 1, 1945, and the last was dated March 30, 1946; each claim was supported by a certificate reading as follows: "I (we) certify that the above information is true and correct; that the operation of the program was in accordance with the agreement; that the claim is just and correct, and that payment therefor has not been received; that the receipts and other records required by the agreement are on file to substantiate this claim; and that the amount claimed does not exceed the purchase cost of agricultural commodities used during the month." Each of these claims set forth the cash income and expenditures of the program during the month, a list of purchases of "designated abundant foods", the number and type of meals served, the number of meals served free, and the amount of the claim. Each was paid by the Government upon vouchers submitted by the War Food Administration.

When the defendant was unable to produce records for inspection by the auditor, the latter interviewed Miss Willie Cox, a teacher at the school, who advised him that the records pertaining to the program had been lost or destroyed, but that lunches had been served to the students during the period in question. The auditor made a report of his investigation and concluded the same with the following statement: "Because of the failure on the part of the sponsor (the District) to maintain records as required by Section VII of the agreement, the entire amount claimed and paid, $602.71, for the period is considered to have been overpaid." The same view was taken by the Comptroller General. On July 3, 1947, a letter of demand was written to the defendant, and the demand not being complied with, this suit was filed in February of the current year.

The Government's complaint, after setting out the pertinent statutes, alleges the making of the original agreement in 1944 and the extension thereof, and quotes Article VII of the agreement, which has been heretofore analyzed; the complaint further alleges the submission and the payment of the several claims, and then concludes with the following operative allegation: "The debtor failed to produce records to substantiate its claims for funds expended. Accordingly, the entire amount claimed by the debtor and paid by the Government, $602.71, has been overclaimed and overpaid, and the said sum * * * is therefore properly for refund by the debtor to the United States."

In its answer the defendant sets up four defenses: The first is that the complaint fails to state a claim upon which relief can be granted; the second is, in effect, a general denial, which appears to have been abandoned; the third is a plea of substantial performance on the part of the defendant; and the fourth alleges that the payments made by the Government were voluntary payments, made upon claims submitted by the defendant in good faith, which claims contained true statements of fact; that the defendant, relying upon such payments, expended considerable sums of money from its own funds in setting up facilities for serving food at cost to its children, that patrons of the District contributed time and labor without cost to effectuate the purposes for which such payments were made, and that "the recovery from the defendant of such voluntary payments made by the plaintiff would be unconscionable and oppressive."

In their respective motions for summary judgment each side alleges that there is no genuine issue as to any material fact in the case, and that it is entitled to judgment as a matter of law. In support of its motion the plaintiff has filed copies of the contract between the parties, the various claims and vouchers submitted by the defendant, the Certificate of Settlement issued by the Comptroller General, and the audit report to which reference has heretofore

been made. The defendant has likewise filed a copy of the contract and the extension thereof together with affidavits executed by Miss Willie Cox, S. Y. May, and Mrs. W. H. Trail. These affidavits were filed for the purpose of showing that the program was conducted in accordance with the agreement, and that records were kept and maintained but were lost or inadvertently destroyed prior to the visit of the auditor.[3]

## I.

 Before a motion for summary judgment may be properly granted, it must clearly appear that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure, Rule 56(c). The moving party has the burden of showing the absence of such an issue, and any reasonable doubt in that connection will be resolved in favor of the party resisting the motion, and facts asserted by such party must be taken as true. 3 Barron & Holtzoff, "Federal Practice & Procedure," Sections 1234 and 1235; Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 168 A.L.R. 1130; Sprague v. Vogt, 8 Cir., 150 F.2d 795; Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; Furton v. City of Menasha, 7 Cir., 149 F.2d 945; Zell v. American Seating Co., 2 Cir., 138 F.2d 641. Where, as here, both sides move for summary judgment, each, for the purpose of his motion, concedes and affirms that there is no issue of fact to be decided. 3 Barron & Holtzoff, op. cit., Section 1239,

---

3. In her affidavit Miss Willie Cox stated: She taught school at Haynes for 13 years, including the 1945–46 year, which was the last year that Mr. Eugene Gilbert was principal. Mr. Gilbert had charge of the school lunch program; while she had nothing to do with the program, she knows that Mr. Gilbert kept and maintained records of its operation. She knows this because he showed her the records, which were in a large drawer in his desk, and told her that if the school wished to continue the program for another year, it would have to have the records. The principal for the next year was a Mr. Henley, and she showed him the papers before the new term began. She does not know what happened to the records, but does know that considerable cleaning up was done around the school before the new term began, and that possibly the records may have been destroyed at that time. Another reason she knows that Mr. Gilbert kept records is that in the spring of 1946 a representative of the Government stopped the program for noncompliance with health standards, and at the time this representative made her inspection, affiant saw her talking with Mr. Gilbert and going over the records which at that time were spread out on a large table.

Mrs. W. H. Trail affirmed that she had worked in connection with the program during 1945–46; that while she knows nothing about records she knows that meals were served, which were good and substantial. The price of these meals was 15 cents each. As a housewife of long experience she knows that meals could not be served at that price and a profit be earned; for that reason she is of the opinion that the meals were served at cost.

According to his affidavit, Mr. May has been a member of the Haynes School Board for 15 years, and was secretary of the board when Gilbert was principal in 1944–45 and 1945–46; Gilbert handled the entire program. Gilbert bought from affiant's grocery store and from other stores in Haynes, and always asked for itemized bills. He knows the program was conducted because he frequently inspected it; he is "absolutely certain" that all meals were served at cost because no profit could have been made by serving meals such as were served by Gilbert for 15 cents a meal. Neither he nor any other member of the board knew that records were supposed to be maintained; if they had known that they were going to be called on to pay back the federal funds received if they could not produce records, they would have made certain that records were available.

The plaintiff criticizes these affidavits on the ground that they are based on hearsay and the conclusions of the affiants and contends that they are without probative force to establish compliance with the terms of the agreement on the part of the defendant or to establish the original existence of records. We do not entirely agree with the plaintiff in this connection, but the view which we take of the case renders it unnecessary for us to determine affirmatively the effect to be given to these affidavits.

page 102. The mere fact, however, that both sides ask for summary judgment does not establish that there is no issue of fact and where there is such an issue, no summary judgment on the disputed facts should be granted. M. Snower & Co. v. United States, 7 Cir., 140 F.2d 367. With these principles in mind we consider, first, the plaintiff's motion.

It is undisputed that when the plaintiff's auditor called upon the defendant in the fall of 1946 and in the spring of 1947, the latter was unable to produce records of the operation of the program during the 1945–46 school year, and that it, therefore, failed to fulfill the requirement that it should "make available to the Administration for examination, at any reasonable time and place, all records pertaining to the operation of the program."

If the inability of the defendant to produce the records is of itself sufficient to entitle the plaintiff to restitution of all payments made by it, irrespective of the reason for the defendant's inability, and irrespective of the manner in which the program was actually conducted, then plaintiff's motion should be sustained. On the other hand, if questions relating to the actual conduct of the program, the truth of the claims submitted, the initial establishment and maintenance of records, or the reasons why the records could not be produced when called for, have a material bearing on the plaintiff's right to recovery, it cannot be said that there is an absence of genuine issues as to material facts which would entitle the plaintiff to judgment as a matter of law, for the defendant contends that the program was properly conducted, that records were kept and maintained, and that its inability to produce the records was excusable. We accordingly assume, for the purpose of passing upon the plaintiff's motion for summary judgment, that the only breach of contract of which the defendant has been guilty was its inability to produce the records. In passing upon said motion we are required to apply general principles of contract law for we have found no case dealing with the effect to be given to a breach of a contractual undertaking to preserve records for inspection where all of the other obligations of the contract were performed. Both sides agree that the contract in this case is to be construed just as though both parties thereto were private individuals or corporations.

In support of its motion the plaintiff contends that the defendant's failure to produce proper records was of itself a substantial breach of condition or failure of consideration, and that it is, therefore, entitled to a rescission of the contract and a recovery back of all moneys paid. It further claims that it is entitled to rescission and restitution by virtue of Article X of the contract, above referred to, and it finally contends that the payments made by it were made under a mistake of fact, and are for that reason recoverable. We do not agree with any of these contentions.

The general principles of law governing rescission of a contract for failure of consideration or breach are familiar and may be briefly stated:

■■ Where there is an entire or substantial failure of the consideration for a contract, the injured party may rescind and recover back the money paid; on the other hand, an insubstantial failure of consideration does not justify a rescission but only lays the foundation of an action for damages, if any have been sustained. Where there is a partial failure of consideration, there may be no rescission unless the failure goes to the root of the contract or is such as to defeat the aims and intentions of the contracting parties. 17 C.J.S., Contracts, § 420, p. 905; Farrell v. Third National Bank, 20 Tenn.App. 540, 101 S. W.2d 158.

■ Where there is a substantial nonperformance of a contract or a material breach thereof, rescission may be granted; but the right to rescission and restitution is an extreme one and does not arise from every breach. The general rule is that rescission will not be permitted for a slight or casual breach of the contract, but only for such breaches as are so substantial and fundamental as to defeat the object of the parties in making the agreement. 17 C.J.S., Contracts, § 422, p. 906. This general rule

is stated in 12 Am.Jur., Contracts, Section 440, pp. 1020–1021, as follows:

"It is not every breach of a contract or failure exactly to perform—certainly not every partial failure to perform—that entitles the other party to rescind. A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom. A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for.

"A material breach warrants rescission. There may be a rescission if there is a failure to perform a substantial part of the contract or one of its essential terms."

■ Rescission is allowed where one of the parties breaches a "dependent covenant", which is such a covenant as goes to the whole consideration of the contract, "But a breach of an independant covenant, of a covenant which does not go to the whole consideration * * * but which is subordinate and incidental to (a contract's) main purpose, does not constitute a breach of the entire contract or warrant its rescission by the injured party." 17 C.J.S., Contracts, § 425, pp. 910–911. Where the breach is purely technical and causes no actual loss to the plaintiff, the latter has no claim for damages, much less for rescission. Block v. City of West Palm Beach, 5 Cir., 112 F.2d 949.

In the light of these principles we do not believe that the defendant's mere inability to produce records can, standing alone, be considered as such a failure of consideration or breach of contract as would entitle the plaintiff to rescission and restitution.

■ Before discussing this question further we desire to point out what is, to our mind, a pertinent distinction between the contractual requirement that the defendant submit in support of its claims certificates to the effect that the program was being properly conducted and that the receipts and records substantiating the respective claims were "on file", and the requirement that the receipts and records be preserved and made available for inspection. There is no doubt that the certificates submitted in support of the several claims were required to state the truth, and that the plaintiff relied upon their truth in making payments. It would appear, therefore, that the truth of these certificates was a condition precedent to the plaintiff's obligation to make payment, and if there was a breach of that condition, the plaintiff might well be able to recover. If the plaintiff is relying on such a breach, however, it is not entitled to summary judgment for the defendant contends that such condition was performed, that is to say that the certificates were true; as stated if the plaintiff's motion is to be sustained it must be upon the theory that the defendant's breach of the second requirement mentioned above of itself entitles the Government to rescission and restitution. For this reason we consider only the effect of the defendant's failure to produce records and, as heretofore indicated, we assume that proper records were in exisence and were being maintained at the time the various claims were submitted, and that the certificates included in said claims were true.

The agreement involved in this case was unlike an ordinary business contract entered into in the hope of financial gain; neither the Government nor the District expected to make any money out of the lunch program, and while both no doubt expected to derive benefits therefrom, these benefits were in the highest degree indirect and intangible. The objects of the parties were to feed the school children and to stimulate the consumption of certain foods, thus improving the public health and bolstering the agricultural economy. If the

program was in fact properly carried out by the defendant, these objectives were presumably achieved, irrespective of the keeping of records, and irrespective of whether or not the defendant was able to produce such records when the auditor called for them. Hence, the mere inability of the defendant to produce records would not necessarily mean that the program had not been carried out in accordance with the contract or that the Government had not obtained every benefit which it expected to derive in connection with the program.

█ Now, there were certain things which the defendant would be required to do, at least substantially, if the objectives of the program were to be attained. The defendant was required to purchase food at prices no higher than those generally prevailing in the area, to buy locally insofar as feasible, to accept donations of food from the Government, to offer meals at cost to all school children, and to serve such meals without cost or discrimination to those who were unable to pay. It would also have to set up proper facilities for storing and serving food, and to maintain adequate health and sanitation standards. These obligations, obviously, were directly and intimately related to the proper conduct of the program and went to the very heart of the agreement between the parties. A substantial breach of one or more of them might well defeat the purposes of the entire program. The requirement that records be kept and preserved, however, stands on a different footing; that requirement was not, in our opinion, so intimately and directly connected with the aims of the parties that a breach thereof could be said to go to the root of the contract or defeat the intentions of the parties. Such requirement was independent and subsidiary, and was inserted solely for the purpose of enabling the Government to ascertain that the defendant was properly discharging what may be termed its "primary obligations", above referred to, and that federal funds were not being misapplied. This being so, a breach of it, alone, does not call for rescission and restitution.

█ The parties, in their briefs, have discussed the character of the re-

quirement under consideration as a "condition subsequent", on the one hand, or an "independent covenant" on the other. We agree with the defendant that it was an independent covenant. The main distinction between a condition subsequent and an independent covenant lies in the remedy available to the injured party in case of a breach; if an undertaking is a condition subsequent, a breach thereof may entail a forfeiture of estates or rights already vested, whereas if it is but an independent covenant, such breach works no forfeiture but simply gives to the injured party a right to recover damages, if any have been sustained. Rooks Creek Evangelical Lutheran Church v. First Lutheran Church of Pontiac, 290 Ill. 133, 124 N.E. 793, 7 A.L.R. 1422; Globe American Corporation v. Miller Hatcheries, Mo.App.; 110 S.W.2d 393; Brown v. Chicago & Northwestern Railroad Co., Iowa, 82 N.W. 1003; County Board of Education for Jefferson County v. Mill Creek Methodist Church, 242 Ky. 147, 45 S.W.2d 1026. Conditions subsequent, when relied upon to work forfeitures, are not favored by the law, and they do not arise unless they are expressly set forth or clearly implied; they are strictly construed, and when it is doubtful whether a given contractual provision is a condition subsequent or an independent covenant, the Courts ordinarily construe it as the latter. 17 C.J.S., Contracts, § 407, p. 897; Byars v. Byars, 11 Tex.Civ.App. 565, 32 S.W. 925; Burgson v. Jacobson, 124 Wis. 295, 102 N.W. 563; Sheets v. Vandalia R. Co., 74 Ind.App. 597, 127 N.E. 609; for other cases see 8 Words & Phrases, p. 478 at pages 486–488. In 12 Am.Jur., Contracts, Section 295, page 848, it is said: "Whether words in a contract amount to a condition, a limitation, or a covenant may be a matter of interpretation depending on the contract. The intention of the parties to the instrument, when clearly ascertained, is of controlling efficacy, although conditions and limitations are not readily to be raised by mere inference and argument. The distinctions on this subject are extremely subtle and artificial. It has been said that the interpretation of a contract as to its operation and effect will, after all, depend less on artificial rules than

852

on the application of good sense and sound equity to the object and spirit of the contract in the given case."

We have already pointed out that the contract before us was not entered into in the hope of profit but from motives which were altruistic; under such circumstances we do not believe that the parties intended to deal with each other with any particular harshness in the matter of remedies for breach, and we are of the opinion that if the plaintiff had intended to impose upon the defendant the duty of restoring all funds received, upon a breach by the latter of an undertaking which was essentially subsidiary and incidental to the main object of the agreement, and if the defendant had intended to assume such an obligation and incur such a risk, such intent would have been clearly and expressly set forth in the contract.

 With respect to Article X of the contract, the Government contends that this provision conferred upon it the right to "terminate the contract upon proof the Haynes School Board failed to comply with the agreement"; it argues further that the word "cancel", used in said Article, is tantamount to "rescind", and that upon any breach of the contract it had a right to rescind the same and secure a refund of all the payments made. We cannot accept this contention. In the first place, we do not think that this Article has any bearing on the instant case because the right of termination therein given to the plaintiff was not exercised during the contract period. The contract finally expired on June 30, 1946, and after its expiration it would appear that the provisions contained therein relative to an earlier termination ceased to have any significance. Aside from that, however, we do not believe that even if the plaintiff had demanded the records prior to June 30, 1946, the defendant's mere inability to produce them would have entitled the Government to restitution under this Article. We think that this provision, when properly construed, simply means that if the Government received evidence, prior to the expiration of the contract, that the terms and conditions of the contract were not being fully complied with by the defendant, it had a right, without notice, to cease co-operating with the defendant in the conduct of the lunch program and to withhold further payments from it. While we do not believe that the exercise of such right would necessarily prejudice the Government in the pursuit of any remedies which it might have by reason of the breach which brought about the cancellation, including restitution of sums already paid if the breach otherwise warranted it, yet, on the other hand, we do not believe that it was the intention of the parties by virtue of this Article to place upon the defendant the burden of refunding all sums received upon any breach of the contract, however slight.

 As stated, plaintiff contends that it made payments to the defendant under a mistake of fact, the alleged mistake being the belief that records were "being kept and maintained". It is well settled that moneys paid under a mistake of fact may be recovered, but the mistake must be of a past or existing fact. 40 Am.Jur. Payment, Sections 187 and 192. If the certificates filed by the defendant, which recited that the receipts and records substantiating the respective claims were "on file", were true, as we must assume that they were, then there was no mistake as to an existing fact, but, at most, a mistaken belief that the receipts and records then in existence would be available for inspection at some future time. There is nothing necessarily inconsistent between the truth of the certificates at the time they were made and the fact that several months later the records were not available. It is a well known fact that records are sometimes mislaid or lost even in well regulated offices, and while the defendant does not contend that the records were kept elsewhere than in Mr. Gilbert's desk drawer, which was not a particularly safe place to keep them, yet many people preserve their papers in similar places, and the contract before us did not require the preservation of the records in any particular place.

 Further reasons for denying the plaintiff's motion are that there is no showing here that the plaintiff has suffered any damage whatever from the defendant's

inability to produce the records, and there is no way of restoring the defendant to the position it was in prior to the making of the contract. The idea of rescission implies the re-establishment of the status quo prevailing before the contract was made, and ordinarily the party seeking rescission and restitution cannot retain the benefits which he has received from the other party's performance. 12 Am.Jur., Contracts, Sections 451, 452; 17 C.J.S. Contracts, §§ 438, 439. In Grymes v. Sanders, 93 U.S. 55, 23 L. Ed. 798, the Supreme Court held that if the parties cannot be restored to their prior positions rescission will not be awarded unless the clearest equity demands it. There is no such demand here; on the contrary, to order restitution by the defendant would be inequitable and oppressive. It would leave the Government with all of the benefits flowing from the defendant's operation of the program and would cast upon the latter the entire burden thereof, including not only expenditures for food but also sums paid for labor and the expenses incidental to providing facilities for the serving of meals and the storing of food.

## II.

From our conclusion that the plaintiff is not entitled to a summary judgment merely because the defendant was unable to produce its records, it follows that the Government's complaint, as presently drawn, does not state a claim upon which relief can be granted. This is true because the complaint alleges as a basis for relief nothing more than the non-production of the records for inspection, and we have found that this is insufficient. There is no allegation that the program was not properly conducted, nor is it alleged that the claims submitted or the certificates included therein were in fact false. In its briefs, however, the plaintiff appears to argue indirectly, or at least to suggest the possibility, that the defendant did not fulfill what we have termed its "primary obligations" under the contract, that it never kept any records, and that the certificates submitted were false. Under these circumstances we feel that if the Government desires to amend its complaint so as to set up other alleged breaches on the part of the defendant, or to allege that any one or more of the certificates was in fact false, it should have an opportunity to do so, and it will be allowed 30 days within which to file such an amendment. If no such amendment is filed, the complaint will be dismissed.

The present disposition which we are making of this case renders it unnecessary for us to pass at this time upon the defendant's motion for summary judgment since if the Government does not amend its complaint, the same will be dismissed, which is the only relief sought by the defendant in its motion. In this connection, it might also be said that, by its motion and affidavits, the defendant contends not only that the mere failure on its part to produce records does not entitle the plaintiff to restitution, but it also contends, affirmatively, that it actually performed the agreement in substantial accordance with its terms, and that there is no genuine issue of fact with respect to such performance. To grant the defendant's motion would be, in effect, to sustain its latter as well as its former contention and such action at this time would be, at least from an equitable standpoint, premature since the plaintiff has not alleged that the defendant breached the contract otherwise than in failing to produce records, and such allegations may never be made. If the plaintiff does amend, the defendant may renew its motion, and it will then be time enough to determine whether or not there are any disputed questions of fact relative to its performance or to the truthfulness of the certificates which it submitted, and whether or not it is entitled to a judgment on the merits as a matter of law.

An order in accordance with the foregoing will be entered.