[No. 34405.   Department Two.   August 7, 1958.]

RICHARD E. BARBER et al., Appellants, v. NELSON ROCHESTER et al., Respondents.[1]

[1]Reported in 328 P. (2d) 711.

Fred H. Dore and James D. Dubuar, for appellants.

Everett O. Butts and Hereford T. Fitch, for respondents.

FOSTER, J.—Appellants, plaintiffs below, sued the respondents for the rescission of a sale or exchange of properties. Many of the thirty-five assignments of error are directed to the findings of fact, but, because the case must be reversed for the exclusion of evidence, a decision on those assignments would be premature.

Appellants owned an automobile repair business, the real property on which it was conducted, and a home. Respondents had a similar business, the real property on which it was conducted, and a written contract (franchise) with the manufacturer for the retail sale of Plymouth and Chrysler automobiles, and an additional contract (franchise) from the manufacturer for the sale of new GMC trucks. The parties were brought together by a broker who was causticly characterized by the trial court as the common enemy of both. Appellants' house was valued at $10,000, and their business, with the real property known as "Dick's Garage," at $25,000.

Respondents' business, known as the "Mercer Island Garage" or the "Mercer Island Motors," with the personal and real property, was valued at $125,000. A sale or exchange was consummated upon those values. The price of $100,000 was placed upon respondents' real property in an executory contract of sale, which recites a down payment of $25,000, and requires the payment of the balance of $75,000 in monthly installments of $600 with five per cent interest.

$25,000 was the purchase price for the respondents' personal property, on which $10,000 was paid down, and the balance of $15,000 was secured by a chattel mortgage payable at the rate of $200 per month. Thus, the combined monthly installments on the real-estate contract and chattel mortgage amounted to $800.

Appellants deeded respondents their home and the garage property, and conveyed their repair business, and, in addition, paid $1,750 in cash, or a total of $36,750.

By a separate contract, respondents engaged to do everything necessary to the end that the said Plymouth and Chrysler franchise and the GMC franchise would be "assigned to or reissued" to the appellants. For the purpose of facilitating the acquisition of the new-car franchise by the appellants, respondents agreed to operate the new-car business for not less than one year, and agreed to pay the appellants a service fee of $100 for each new car sold. Appellants, in turn, agreed to lease the necessary space to the respondents for the operation of the new-car business.

The complaint sought a rescission of the entire transaction on the grounds of fraud, failure of consideration, and substantial breach of the sale by the respondents.

The gravamen of the appellants' case was that they were desirous of having an automobile dealer's franchise for the sale of new cars; another repair shop, rather than the one which they then owned and operated, did not enter into their decision to purchase. It was the appellants' theory that, except for the new-car franchise, the respondents sold the entire business, including the good will thereof, to them "lock, stock and barrel"—the wrecker, and everything associated with the business—with a single valuation placed upon the whole, and that the sale was partly oral and partly in writing.

It was the respondents' theory, on the other hand, that the entire transaction was in writing; that is, the real-estate contract, the chattel mortgage and the separate contract, respecting the new-car business, covered the entire transaction.

The trial court held, and repeatedly declared, that a contract could be rescinded for fraud inducing the sale and for fraud alone, but that subsequent events were irrelevant, and, consequently, inadmissible. The court said:

". . . He was either defrauded or he wasn't. If he was defrauded to the extent of authorizing rescission, it doesn't make any difference what happened after he was defrauded. . . .

"The answer to it is if this were a contract, purchase and sale, and it became effective, nothing that could ever happen afterward would be sufficient ground for rescission. . . ."

■ Both failure of consideration and the breach of a material portion of a contract are grounds for rescission. *Knatvold v. Rydman,* 28 Wn. (2d) 178, 182 P. (2d) 9; *Capital Sav. & Loan Ass'n v. Convey,* 175 Wash. 224, 27 P. (2d) 136; 5 Williston on Contracts 4064, § 1455; 17 C. J. S. 905, § 420; 12 Am. Jur. 1020, § 440. [2]

■ Offer of proof of such matters was made and denied, to which appellants assign error. The assignment must be sustained. Remedies must be inconsistent before an election may be required. The subsequent events relied upon to entitle appellants to rescind the sale were not at all inconsistent with the alleged fraud in inducing the sale. Indeed, such were, in fact, intimately connected with the claimed prior fraud. But, in any event, only one remedy was sought, that is, rescission of the entire sale. The number of grounds upon which it is sought is immaterial. It is stated in 28 C. J. S. 1070, 1071, § 6:

"However, there is no inconsistency between different remedies all of which are based on the affirmance or disaffirmance of the contract."

■ Here there were not different remedies which were either inconsistent or cumulative, but only different and

---

[2] *United States v. Haynes School Dist. No. 8,* 102 F. Supp. 843; *Esayian v. Baltimore Markets,* 166 Pa. Super. 400, 71 A. (2d) 840; *Faught v. Platte Valley Public Power & Irr. Dist.,* 155 Neb. 141, 51 N. W. (2d) 253; *Davis v. Hastings* (Okla.), 261 P. (2d) 193 (1953); *Miller-Piehl Equipment Co. v. Gibson Comm. Co.,* 244 Iowa 103, 56 N. W. (2d) 25; *Kennedy v. Collins,* 250 Ala. 503, 35 So. (2d) 92.

additional grounds for resort to the identical remedy, the rescission of the contract. Election of remedies at best is a harsh and obsolete rule, the scope of which ought not to be extended (*North American Graphite Corp. v. Allan,* 184 F. (2d) 387; *Smith v. Kirkpatrick,* 305 N. Y. 66, 111 N. E. (2d) 209), and it has for its purpose only the prevention of double redress for a single wrong. *Cashen v. Owens,* 225 Minn. 25, 29 N. W. (2d) 440.

■ The action of the trial court in requiring an election between separate grounds for the same remedy was erroneous.

Appellants' counsel then made a formal offer of proof of the following matters: That the respondents misrepresented the income from the business; that for a long period of time they had sold on an average of twelve to fifteen new cars monthly; that the transfer of the new-car franchise was only a routine matter presenting no difficulty; and that they had great influence in the Chrysler organization. Whereas, the truth was that the transfer of the franchise, or the obtaining of a new one, was impossible, which was at all times known to the respondents, and that the respondents refused to exhibit the new-car franchise to the appellants; that respondents knew the appellants were relying on the income from the service of new cars sold in order to meet the monthly installments on the purchase price, and that, if respondents failed in their contractual obligation to operate the new-car business for at least a year, appellants would be unable to meet monthly installments; that the respondents completely failed to do anything to assist appellants in obtaining an assignment of the new-car franchise, or the obtaining of a new one; that the respondents concealed from appellants the written franchise from the Chrysler Corporation because it required respondents to keep, in their own place of business, a supply of Chrysler and Plymouth parts to render satisfactory and adequate service to all Chrysler and Plymouth customers, and that on August 12, 1955, two representatives of the Chrysler Corporation called on the respondents and advised the respondents, in the presence of the appellants, that, because the

parts and repair service had been sold, the franchise would be terminated; that the franchise was thereafter terminated; that, at the time of the sale, the respondents knew if the service department were sold, the franchise would be canceled; that the respondents knew the franchise could not be transferred as a matter of routine, but that, on the contrary, such transfer was impossible; that respondents refused to transfer the tow truck, and advised the state patrol and the county sheriff towing service was no longer available at the Mercer Island Garage; that they refused to transfer the telephone numbers to the appellants and actually intercepted and diverted all incoming telephone calls by means of a switch within their control; and that respondents procured a post-office box under the name of Mercer Island Garage, or Mercer Island Motors, thus intercepting all of the appellants' mail, and converted checks intended for the appellants, in payment of repair services performed by them, and applied the proceeds upon old accounts owing to the respondents.

The offers of proof were all rejected.

Dean Wigmore tells us that the "so-called Parol Evidence rule is attended with a confusion and an obscurity which make it the most discouraging subject in the whole field of Evidence." 9 Wigmore on Evidence 3, § 2400.

■ He declares in words that *the rule is in no sense a rule of Evidence, but a rule of Substantive Law.*" Wigmore on Evidence, *supra.*

In 1 Restatement, Contracts, 331, § 237 (a), it is said:

" . . . The rule, however, is not one of evidence but of substantive law. . . . "

Corbin, Williston[3] and Thayer[4] agree. Our own cases[5] are in accord.

---

[3] 3 Williston on Contracts 1816, § 632.

[4] Thayer, A Preliminary Treatise on Evidence at the Common Law, 390, chapter 10.

[5] *Reeder v. Western Gas & Power Co.*, 42 Wn. (2d) 542, 256 P. (2d) 825; *Jackson v. Domschot*, 40 Wn. (2d) 30, 239 P. (2d) 1058; *Bond v. Wiegardt*, 36 Wn. (2d) 41, 216 P. (2d) 196; *McGregor v. First Farmers'-Merchants' Bank & Trust Co.*, 180 Wash. 440, 40 P. (2d) 144; *Andersonian Inv. Co. v. Wade*, 108 Wash. 373, 184 Pac. 327.

██ ⁖ The trial court here, however, erroneously applied it as an exclusionary rule of evidence. From an examination of the executory contract for the sale of the real property, the chattel mortgage covering the personal property, and the separate written agreement respecting the new-car sales, the trial court erroneously excluded the offered evidence which had, for its purpose, proof that the three writings did not embrace the entire agreement between the parties. Corbin states the correct rule in the following paragraph:

"In determining these issues, or any one of them, there is no 'parol evidence rule' to be applied. On these issues, no relevant evidence, whether parol or otherwise, is excluded. No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be, however formal, and however many may be the seals and signatures and assertions. No one of these issues can be determined by mere inspection of the written document." 3 Corbin on Contracts 215, 216, § 573.

9 Wigmore on Evidence 97, 98, § 2430 (1), (2), states:

"(1) Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto. In this respect the contrast is between voluntary integration and integration by law (*post*, § 2450). Here the parties are not obliged to embody their transaction in a single document; yet they may, if they choose. Hence it becomes merely a question whether they have intended to do so.

"(2) This intent must be sought where always intent must be sought (*ante* §§ 42, 1714, 1790), namely, in the *conduct and language* of the parties and the *surrounding circumstances*. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses

may be allowed to recite the facts, yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con*, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place.

"In this anomalous process, it merely happens that some of the conduct and other data which are at first resorted to *evidentially* on the question of intent are usually identical with the conduct that may subsequently be treated as legally *inoperative*; but this is a mere coincidence. The two vital differences are, first, that they are looked at for different purposes, and secondly, that they may be dealt with by different branches of the tribunal."

People have the right to make their agreements partly oral and partly in writing, or entirely oral or entirely in writing; and it is the court's duty to ascertain from all relevant, extrinsic evidence, either oral or written, whether the entire agreement has been incorporated in the writing or not. That is a question of fact. *Rinaudo v. Bloom,* 209 Md. 1, 120 A. (2d) 184; *Lawrence v. Tandy & Allen, Inc.,* 14 N. J. 1, 100 A. (2d) 891; *Atlantic Northern Airlines v. Schwimmer,* 12 N. J. 293, 96 A. (2d) 652. The court erred in rejecting the offer of proof.

The judgment is reversed and a new trial ordered.

DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

HILL, C. J., concurs in the result.