707 F.2d 1124
 30 Cont.Cas.Fed. (CCH) 70,307, 34 UCC Rep.Serv. 417
 UNITED STATES of America for the Use and Benefit of FEDERAL
CORPORATION, Appellant,
v.
COMMERCIAL MECHANICAL CONTRACTORS, INC., a corporation, and
Oklahoma Surety Co., a corporation, Appellees.
 No. 80-1897.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 1, 1982.
 
 William J. Robinson of Shirk, Work, Robinson & Williams, Oklahoma City, Okl., for appellant.
 Gary G. Prochaska and Jerry W. Foshee of Foshee, Manger & Yaffe, Oklahoma City, Okl., for appellees.
 Before DOYLE, McKAY and SEYMOUR, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This action was commenced under the Miller Act, 40 U.S.C. Secs. 270a-270d by Federal Corporation (Seller) to recover the balance due for materials furnished to Commercial Mechanical Contractors, Inc. (Buyer) for use in a government contract. Buyer denied the debt, raised several affirmative defenses, and counterclaimed for damages caused by Seller's delay in delivering the materials. After trial, the jury found for Seller on its claim for the balance due on the materials, $45,036.50, but also awarded Buyer a set-off of consequential damages caused by delayed delivery in the amount of $38,825.00. The award of consequential damages is the subject of this appeal.
 
 
 2
 Although the facts of this case are highly disputed in many respects, the evidence in the record supportive of the jury's verdict shows that the events leading up to this lawsuit are substantially as follows. Pursuant to a solicitation from Buyer, Seller submitted a quotation for some underground fuel oil storage tanks to be used by Buyer in the performance of its contract with the United States Department of the Army. The quotation contained an exculpatory clause stating "[w]e are not responsible for delays arising from causes beyond our control," and was later amended in minor detail by letter. An invoice for the materials, containing a stated delivery date, was also sent to Buyer. The quotation, the letter amendment, and the invoice comprise the only written documents generated in connection with the parties' agreement. In addition, several conversations took place between the parties at the time the initial quotation was submitted and prior to the issuance of the invoice. Although disputed, evidence was presented at trial which suggests that Seller assured Buyer that it could deliver the tanks within the time frame required by Buyer. Testimony at trial also suggests that Buyer's acceptance of the quotation was at least in part contingent on Seller's promise to deliver the tanks soon enough for Buyer to complete the prime contract on time. Buyer also offered to pay Seller a premium price for the tanks because they were needed in such a short time. Before digging the holes for the tanks, Buyer inquired of Seller when the tanks would arrive, and at one point was advised that they would arrive shortly or were in transit, when in fact they were not received until several weeks later. There was evidence, disputed by Seller, that Seller's agents knew the tanks would not arrive when Buyer was informed that they were on their way. Buyer began excavating the areas for the tanks, and when they were not immediately forthcoming, Buyer had to shore up the excavation, pump water out, and re-dig some areas that caved in. Buyer therefore encountered additional expenses for time, labor, and materials, which form the basis of its claim for consequential damages.
 
 
 3
 On appeal, Seller claims that the trial judge committed several errors during trial that affected the jury verdict on Buyer's counterclaim. First, Seller argues that the trial judge allowed Buyer to present oral evidence in violation of the parol evidence rule on the issue of the terms of the parties' contract, and erroneously instructed the jury in this regard. Second, Seller claims that the issue of whether the Seller was estopped to raise the exculpatory clause in the quotation because it allegedly purposely misrepresented the delivery date to Buyer was improperly submitted to the jury. Finally, Seller argues that the judge improperly instructed the jury with regard to recoverable damages and the method by which damages should be calculated.[1]
 
 I. Parol Evidence Rule
 
 4
 Seller contends that the entire contract was embodied in the quotation and its revision, which contained a description of the goods, the price, and the exculpatory clause, and the invoice, which recited a delivery date and interest rate. Therefore, Seller argues that the trial court erroneously permitted Buyer to introduce oral evidence, in violation of the parol evidence rule, of an additional agreement by the parties that time was of the essence. See U.C.C. Sec. 2-202. Buyer counters that the three writings were not intended by the parties to represent a final expression of the parties' agreement, and therefore the parol evidence rule does not bar admission of the oral evidence.
 
 
 5
 Section 2-204(1) of the Uniform Commercial Code provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement ...." The expression of agreement can be "oral, written or otherwise." U.C.C. Sec. 2-204, comment. Furthermore, an agreement can be entirely oral, or entirely in writing, or partly oral and partly written. Barber v. Rochester, 52 Wash.2d 691, 698, 328 P.2d 711, 715 (1958); J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code Sec. 2-9, at 75 (2d ed. 1980). The fact that the parties have embodied part of their agreement in a writing does not lead to the inevitable conclusion that the writing was intended to state the parties' entire agreement.
 
 
 6
 It is the court's preliminary duty to determine from all relevant evidence, both written and oral, whether the parties have incorporated their entire agreement in a writing. A trial judge may then invoke the parol evidence rule to exclude oral evidence of terms extrinsic to the writing if he finds (1) "that the parties intended the writing to be a complete and exclusive statement of the terms of the agreement," or (2) "that the writing is a final written expression as to these terms and that the other evidence contradicts these terms." J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code Sec. 2-9, at 77 (2d ed. 1980). "Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto." Wigmore on Evidence Sec. 2430, at 98 (Chadbourn rev. 1981).
 
 
 7
 Prior to trial in this case the judge heard and overruled Seller's "Motion in Limine Objecting to the Introduction of Oral Evidence Contradictory of the Terms of the Written Offer and the Acceptance Thereof." Record, vol. 2, at 277. The judge's oral ruling on this motion was not designated for the record on appeal, so we do not know the precise basis for his ruling. We can infer, however, that the hearing on the motion required the trial judge to consider all the evidence of the parties' intentions, and that the judge made a preliminary determination that the writings did not constitute a complete and exclusive statement of the terms of the contract, or more specifically, that the writings either were not conclusive with respect to whether the parties' agreement contained a "time is of the essence" provision or that such a provision did not contradict the writings.[2] Because of the skeletal nature of the writings evidencing the parties' agreement, such an inference is reasonable.[3] Under the circumstances, the parol evidence rule does not operate to bar admission of the oral evidence. Therefore, the judge properly admitted the oral evidence of the parties' agreement and submitted the factual issues concerning the substance of the parties' agreement to the jury. See Leveridge v. Notaras, 433 P.2d 935, 940-41 (Okl.1967). The court instructed the jury that it could find that the agreement between the parties consisted of both written and oral promises,[4] and that in determining what the terms of the contract were, the jury should attempt to ascertain the parties' intent as it existed at the time the contract was formed. There was ample evidence presented at trial from which the jury could conclude that time was of the essence in the parties' agreement, that Seller breached the contract in this regard, and therefore was responsible for damages caused by the delay in delivery of the tanks.
 
 II. Equitable Estoppel
 
 8
 Buyer raised the affirmative defense of equitable estoppel in connection with the exculpatory clause in Seller's quotation, which stated that Seller would not be responsible for delays beyond its control. Seller argued that the delays were the fault of its supplier, and therefore beyond its control and not its responsibility under the contract. Buyer contends that even if the jury found the exculpatory clause to be a valid term of the contract, Seller is estopped to rely on it to deny liability for consequential damages because Seller misrepresented that the delivery was forthcoming, when its agents knew the facts to be otherwise, and Buyer relied on that representation to its detriment in preparing the holes for the tanks. In this regard the trial court instructed the jury:
 
 
 9
 If you find that the parties contemplated that [Seller] would not be responsible for delays beyond its control and that the delays were beyond its control, then you should find only for the [Seller] unless you find for the [Buyer] on [its] affirmative defense of equitable estoppel.
 
 
 10
 Record, vol. 13, at 542. The court then correctly instructed the jury on the elements necessary to establish estoppel.
 
 
 11
 When the facts comprising the elements of estoppel are disputed, the issue is appropriately submitted to the jury if there is evidence to support the existence of estoppel. See United States v. James Stewart Co., 336 F.2d 777, 779 (9th Cir.1964). See also General Finance Corp. v. Jackson, 296 P.2d 141, 143-44 (Okl.1956); Exchange National Bank v. Essley, 173 Okl. 2, 4, 46 P.2d 462, 464 (1935). The facts that would establish estoppel in this case were disputed. Buyer claims that Seller knew the tanks were not coming but misrepresented this fact to Buyer, and Seller refutes this contention. Each party presented evidence to support its theory. Therefore, contrary to Seller's contention, there was evidence to support a finding of estoppel. Because the factual issues relating to estoppel were disputed, they were properly submitted to the jury. We have reviewed the record and find sufficient evidence to support a jury conclusion that Seller's agents knew the tanks would not arrive when promised, and that this fact was misrepresented to Buyer.
 
 
 12
 Seller also contends that the trial court erred in refusing to submit its proposed special interrogatories to the jury concerning specific facts establishing estoppel, and relating these facts to the damages claimed by Buyer.[5] Fed.R.Civ.P. 49(b) provides that "[t]he court may submit to the jury ... written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." However, this is a matter within the discretion of the trial judge, and absent a clear abuse of that discretion, the failure to submit the proposed interrogatories does not constitute error. Smith v. Welch, 189 F.2d 832, 837 (10th Cir.1951). No such abuse is apparent in this case.
 
 III. Damages
 
 13
 Seller argues that the trial court erred in admitting evidence of recoverable damages, and in allowing Buyer to include extended overhead as an element of damages. Buyer is entitled to recover for all damages caused by Seller's breach that were reasonably foreseeable to the parties at the time they entered into the contract. Hadley v. Baxendale, 156 Eng.Rep. 145 (1854). Ample evidence was presented to support Buyer's contention that the special circumstances leading to the damages, and the type of damages it suffered were in the realm of foreseeability as defined in Hadley v. Baxendale. Furthermore, expert testimony supports the conclusion that there was nothing unusual about the way Buyer calculated its damages. Extended overhead is an appropriate element of damages in a case where delayed delivery extends the time necessary to complete a contract. Guy James Construction Co. v. Trinity Industries, Inc., 644 F.2d 525, 532 (5th Cir.1981); Burgess Construction Co. v. M. Morrin & Son Co., Inc., 526 F.2d 108, 117 (10th Cir.1975), cert. denied, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976); Gulf States Creosoting Co. v. Loving, 120 F.2d 195, 203 (4th Cir.1941). Buyer's calculation of the amount of damages attributable to extended overhead is supported by evidence in the record.
 
 
 14
 Seller also claims that it was error for the trial court not to instruct the jury to allocate the damages between the first and second holes dug by Buyer. Seller claims that even if it is responsible for some of the damages resulting from the digging of the first hole, it is not responsible for damages resulting from the digging of the second hole because Buyer began work on that hole after receiving notice that the tanks would be delayed. The testimony at trial on this point was conflicting, but the evidence that Buyer was not notified of the delay before it began excavation of the second hole is sufficient to support a jury verdict encompassing damages for both holes.
 
 
 15
 Accordingly, the judgment is AFFIRMED.
 
 
 
 [1]
 We note initially that "[t]here is a conflict in the circuits ... whether federal or state law governs the construction of a subcontract to which the United States is not a party in a case arising under the Miller Act." United States v. Federal Insurance Co., 634 F.2d 1050, 1052 (10th Cir.1980) (citing Burgess Construction Co. v. M. Morrin & Son Co., Inc., 526 F.2d 108, 114 n. 2 (10th Cir.1975), cert. denied, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976)). As in Federal Insurance Co. and Burgess, we find it unnecessary to decide this issue for the purposes of the instant case. The parties' briefs rely primarily on the law of Oklahoma, the place where the contract was formed and carried out. We find no conflict in the state law relied on by the parties and the general principles of contract law
 
 
 [2]
 Under Oklahoma law, time is never considered as of the essence unless it is expressly so provided, but "no particular form of expression is required." However, "it must appear from the express provisions ... that it was the intention of the parties thereto that time should be [of] the essence ...." Kaiser v. Crouch, 504 P.2d 429, 432 (Okl.1972) (quoting Mitchell v. Probst, 52 Okl. 10, 15, 152 P. 597, 599 (1915)). Sufficient evidence was presented at trial from which the jury could find that the parties orally agreed that time was of the essence. Okla.Stat.Ann. tit. 15, Sec. 174 (West 1966), which provides that time is not of the essence unless expressly so provided, does not appear to apply solely to written contracts, so that parties to an oral contract may also agree that time is of the essence. See Carriger v. Ballenger, 628 P.2d 1106, 1109 (Mont.1981)
 
 
 [3]
 A written bid or quotation has consistently been construed as nothing more than an offer to perform labor or supply materials, and the offer does not ripen into a contract until it is accepted by the offeree. See Carriger v. Ballenger, 628 P.2d 1106, 1108-09 (Mont.1981) and cases cited therein. In this case, on the evidence presented the trial judge could find that Buyer accepted the bid upon the condition that the tanks be supplied within a specific time frame. Therefore, Buyer's oral acceptance would have been construed as a counteroffer because it added to or varied the terms of the offer. Okla.Stat.Ann. tit. 12A, Sec. 2-207 (West 1963). This construction of the parties' agreement supports the conclusion that there was no final, complete written document intended by the parties to contain all of the terms, and that the written documents did not embody the parties' final agreement concerning the time for delivery
 
 
 [4]
 Seller argues that the court improperly submitted to the jury the issue of whether the writings constituted a final expression of the parties' agreement. It is true, as we have stated in this opinion, that this is a preliminary question for the judge to determine before submitting any parol evidence to the jury. In effect, the submission of this issue to the jury gave the jury a "second bite" at the question of whether the delivery date was governed solely by the writings. Since we have found that this issue was decided adversely to Seller as a matter of law in the judge's ruling on Seller's motion in limine, the submission of this issue to the jury could not have prejudiced Seller
 
 
 [5]
 In this regard Seller specifically alleges that even if it should be estopped to assert the exculpatory clause with respect to the first hole, the evidence does not support such estoppel with respect to the second hole. The evidence on each side was highly disputed, so that even a full reading of the record yields only a blurred picture of what actually occurred. It is the jury's duty to assess the credibility of the witnesses, and so long as the jury's verdict is supported by evidence, it will not be disturbed on appeal. We find sufficient evidence in the record to support the estoppel verdict with respect to the second hole